[S. F. No. 123.    Department Two.—October 3, 1896.]

# THE PACIFIC COAST STEAMSHIP COMPANY, RESPONDENT, *v.* JOHN S. KIMBALL ET AL., APPELLANTS.

HARBOR — LEASE OF PART BY CITY — PRIVATE WHARF OF STEAMSHIP COMPANY — REGULATION OF DOCKAGE — USE BY OTHER VESSELS — INJUNCTION.—Where a seaport city located upon a bay has about two miles of harbor within its limits, of which it received a grant from the legislature, with permission to the city trustees to lease it for a period not to exceed ten years, in such manner and upon such terms as may by them be deemed most advantageous, a lease by them for ten years to a steamship company of a portion of the harbor for the erection and repair of a wharf, comprising the wharf and one hundred and fifty feet on each side thereof, is valid; and a limitation of maximum charges for dockage at the wharf in the lease, not made a condition of the estate granted, does not require the lessee to permit the use of the wharf by other vessels, and such lessee may enjoin the owners of another vessel from landing its passengers and freight at such wharf, notwithstanding a tender by such owners of the amount of such maximum dockage.

ID.—SOLE WHARF—VALIDITY OF LEASE.—The fact that the wharf leased to the steamship company was the sole wharf existing in the harbor, and was rebuilt by the lessee from an old dilapidated wharf, cannot affect the validity of the lease, the city not having obligated itself not to build or to permit others to build other wharves, and there being no agreement that the wharf leased should constitute the only wharf in the harbor.

ID.—GRANT OF ESTATE IN LAND — FRANCHISE — CONSIDERATION OF LEASE. The lease of the land to the steamship company, including the wharf, operated as a grant to it of an estate in land, and not as a mere franchise; and the right to collect wharfage and dockage, considered as a franchise, was an unimportant part of the consideration for the lease.

ID.—LEASE FOR PRIVATE USE — CONSTRUCTION OF GRANT — CONDITION.— The city having a right to lease a wharf for private use, its grant to the steamship company must be construed like any other grant, and a condition cannot be put upon the estate granted which is not expressed or clearly implied.

APPEAL from a judgment of the Superior Court of Monterey County, and from an order denying a new trial.    N. A. DORN, Judge.

The defendants were the owners of the steamer "Protection," and claimed the right to land passengers and freight at the wharf leased to the plaintiff upon tender of the maximum dockage fixed in the lease.    Further facts are stated in the opinion of the court.

*W. A. Kearney,* for Appellant.

*George W. Towle, Jr., S. F. Geil,* and *John J. Wyatt,* for Respondent.

Temple, J.—This action was brought to obtain an injunction restraining defendants from landing passengers and freight at plaintiff's wharf at Monterey.

In 1868 the legislature granted to the city of Monterey all the water front included within the corporate limits for the use and benefit of the city, with the condition that it should not be subject to execution, but might be leased for a period not to exceed ten years by the city trustees, "in such manner and upon such terms as may by them be deemed most advantageous."

Monterey contains about two thousand inhabitants, and has railroad connections as well as its advantages as a seaport. In 1880 it leased to the plaintiff a small portion of its water front, upon which was an old wharf which, however, had become so dilapidated as to be unsafe. The indenture of lease contained the following: "In consideration whereof the said parties of the second part do hereby agree to erect a wharf on the said premises, and to keep the same in good repair during the term of this lease. Said parties of the second part shall be entitled to collect wharfage on goods and merchandise passing over said wharf at the rate of fifty cents per ton, and such rates of dockage for vessels as is ordinarily charged at other wharves on the southern coast. And it is hereby agreed and understood by the parties hereunto that in case of failure by the party of the second part to keep said wharf in repair, or if the same shall become dilapidated and unfit for use and should so continue for the space of ninety days after notice from the party of the first part to repair the same, then this lease shall cease, and thereafter shall be null and void."

Plaintiff owned and operated several steamships which made weekly trips between different ports of

California, and was a carrier of freight and passengers. It at once, after obtaining the lease, proceeded to rebuild the wharf, and occupied and used it exclusively for its own business. It so continued to use the wharf up to 1888, when the present lease was obtained. During that period no vessels made use of the wharf save their own and a few schooners loaded with lumber which used the wharf by plaintiff's consent.

In 1888 a new lease was obtained from the city identical in terms with the first lease. The order of the city council authorizing the new lease contains the following: "The lease to be executed and entered into with said company upon the condition that said company shall promise to keep said wharf in good repair, and shall not charge to exceed fifty cents per ton wharfage."

There are about two miles of seashore within the city of Monterey. The portion leased extended one hundred and fifty feet on each side of the wharf, and was an inconsiderable portion of the harbor. There is not now, and has never been, another wharf at Monterey.

It is claimed that under the circumstances the city could not lease any portion of the harbor for a private wharf. I am unable to see, however, any ground for this contention. A wharf is not, like a toll-bridge or a ferry, in its very nature a public utility. Wharves are often appropriated to the use of an individual or a company, and it cannot be doubted that Monterey could lease small portions of its water front for bathing grounds or for any lawful purpose not injurious to the harbor or an inconvenience to commerce.

That being so, I see no reason why it might not lease a small portion to a steamship company for its special use.

The sole question, in my opinion, is whether there is anything in the language used in the lease, or in the resolution of the council authorizing it, which requires plaintiff to permit the use of the wharf by others.

I cannot see that it makes any difference that this is the only wharf at Monterey. The city did not obligate itself not to build or to permit others to build. That it should constitute the only wharf was no part of the understanding. It was the grant of an estate in land and not a mere franchise. If the right to collect wharfage and dockage is a franchise, the circumstances show that this franchise was at least not the reason which influenced plaintiff in seeking the lease. It was not exclusive. The lease was not obtained for the sake of the franchise, but, on the contrary, if the franchise constituted any part of the consideration which moved plaintiff it must have been a very unimportant part.

Monterey had no commerce, and, until the proceedings by defendants, it does not seem that anyone has desired to use the wharf except in connection with plaintiff's boats and a few schooners with lumber.

The stipulation to keep the wharf in repair is accounted for by the fact that at the termination of the lease the city will become the owner of the wharf. The regulation as to wharfage was evidently not regarded as a grant of the right to collect wharfage and dockage, but as a restriction upon a right which it was assumed was incident to the privilege of building a wharf. It is so expressed in the resolution authorizing the lease. As the city had a right to lease a wharf for private use, the grant must be judged like any other, and we cannot put a condition upon the estate which is not expressed or clearly implied. Counsel admit that if there were other wharves by which commerce could be accommodated such a lease could be made. As already stated, whether there are other wharves or not is an immaterial circumstance. I cannot find in this mere limitation upon the charges anything which could be made a condition of the estate granted.

The giving of the lease has promoted commerce at Monterey. It has secured the landing of at least five steamers per week. Whether otherwise she would have any commerce does not appear. It is no monopoly, for

the city can easily cause other wharves to be constructed for general use.

It is conceded by appellants that if the defendants are not entitled to demand the use of the wharf by tendering the maximum wharfage allowed, plaintiff is entitled to the remedy demanded. For this reason I have not stated the nature of the trespass threatened.

The judgment and order are affirmed.

McFARLAND, J., and HENSHAW, J., concurred.