[L. A. No. 3057. In Bank.—December 20, 1913.]

THE PEOPLE, upon Information of U. S. Webb, Attorney-General, Respondent, v. BANNING COMPANY (a Corporation), et al., Appellants.

[L. A. No. 3058. In Bank.—December 20, 1913.]

THE PEOPLE, upon Information of U. S. Webb, Attorney-General, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), SOUTHERN PACIFIC RAILROAD COMPANY (a Corporation), HOMER S. KING, and D. O. MILLS, Appellants.

TIDE LAND—PATENT TO LAND WITHIN TWO MILES OF TOWN OF WILMINGTON IS VOID.—*People* v. *California Fish Co., ante,* p. 576, affirmed to the effect that a patent to tide lands situated within two miles of the limits of the town of Wilmington, as incorporated by the act of 1872, is void, and all claims thereunder are invalid, where all proceedings for the acquisition of the land, including the issuance of the patent, were had during the time that such town remained a municipal corporation.

ID.—RAILROAD ABANDONMENT OF RIGHT OF WAY OVER TIDE LAND—CESSATION TO RIGHT OF POSSESSION.—A railroad company, which had constructed a railroad track over tide lands belonging to the state under a right of way obtained in pursuance of the act of May 20, 1861 (Stats. 1861, p. 607), and which afterward abandoned the use of the premises for any purposes connected with the

operation of a railway, and persisted in such abandonment for more than ten years, ceased to be entitled to hold possession of the land, by reason of the express provisions of sections 20 and 22 of that act.

ID.—USE OF LAND FOR OTHER THAN RAILROAD PURPOSES.—The renting by the railroad to some of its employees of a barn, residence, and outbuildings erected on the land was not a use of it for the purposes of a railway.

ID.—CITY OF WILMINGTON—LEASE OF PART OF WATER-FRONT FOR PRIVATE PURPOSES IS VOID.—The city of Wilmington, a city of the sixth class, incorporated in 1905 under the general Municipal Corporation Act, had no title to or interest in the tide land constituting its water-front. That land belonged to the state in virtue of its sovereignty, and no act ceding it to or transferring it to the city has ever been passed. The city had the mere power to improve the water-front, which had been delegated to it by subdivision 2 of section 862 of the Municipal Corporation Act. Such power did not authorize the city to lease to private parties for private uses a portion of such land not covered by or necessary to the improvement, as a consideration for a water-front improvement to be made by such private persons for public use. A lease so attempted to be made by the city was void.

APPEALS for judgments of the Superior Court of Los Angeles County and from orders refusing a new trial. Walter Bordwell Judge.

The facts are stated in the opinion of the court.

Gibson, Dunn & Crutcher, J. W. McKinley, Frank Karr, Ward Chapman, Sheldon Borden, Edward E. Bacon, W. R. Millar, and Lloyd W. Moultrie, for Appellants.

Smith, Millar & Phelps, and H. H. McCloskey, *Amici Curiae*, in support of appeal.

U. S. Webb, Attorney-General, Anderson & Anderson, Leslie R. Hewitt, John W. Shenk, and A. P. Fleming, for Respondent.

SHAW, J.—The appeals in these two cases are from the judgments and from orders denying motions for new trial in the respective cases.

The land involved is that known as tide land location No. 57, being the same location mentioned by that number in the opinion in *People* v. *California Fish Co.,* L. A. No. 3060, *ante,* p. 576, [138 Pac. 79.] That opinion, with the exceptions hereafter noted, covers all the points of law involved in the present cases. The first payment upon this tide land location was made on March 5, 1880. The certificate was issued on April 10, 1880, and the patent was executed on December 16, 1881, to Phineas Banning. The land all lies within two miles of the limits of the town of Wilmington as incorporated by the act of 1872, and under the principles stated in *People* v. *California Fish Co.* aforesaid, the patent is void and all claims of any of the defendants thereunder are invalid.

In 1871 the Southern Pacific Railroad Company constructed a railroad track over a part of this land under a right of way obtained in pursuance of the act of May 20, 1861. (Stats. 1861, p. 607.) It also built a wharf adjoining said track. In 1890 the wharf was destroyed by fire and soon afterward, and more than ten years before this action was begun, the track was taken up and has never been replaced. No use has been made of the premises covered by this permit for the track so removed, except that a barn about twenty by twenty-five feet in size was maintained thereon, together with a residence building and outbuildings. This use was not in connection with any railway or with the business of running a railway, except that it was rented to some of the employees of the railroad. The wharf was not rebuilt or otherwise used. Section 20 under which this permission was given (Stats. 1861, p. 618) provides that if the road, after its location, shall be discontinued or abandoned, or the location of any part thereof be changed so as not to cover the lands of the state over which the permission was given, such land shall revert to the state. Section 22 provides that the company receiving such permission shall not hold the real estate or any right, title, or interest therein after it shall have failed or ceased to use the same for the maintenance of such track for five years continuously. Under these provisions it is obvious that all right of the appellants to hold possession of the lands has ceased and the court properly so held.

Some objection is made to the sufficiency of the location of the line of high tide in the findings and judgment. It is not

necessary to discuss the subject. The line given as the line of high tide is a well-defined government survey and we think the description is sufficient.

The only other matter not covered by the aforesaid opinion in *People* v. *California Fish Co.* is the claim of the appellants, Los Angeles Harbor Company and Imperial Investment Company, under a lease by the city of Wilmington, executed on April 11, 1907, to the Investment Company, for the term of fifty years, for some 15.37 acres of the tide lands covered by the state patent, in consideration whereof the company agreed to dredge a twenty-foot channel to deep water and construct slips adjoining it for the improvement of the facilities for ocean navigation, make a bulkhead or sea-wall, and to fill in the space between the channel and the west shore of the bay. The land to be reclaimed by such fill was the land covered by the fifty-year lease to said company. The channel and slips were apparently to be devoted to public use, although it is not expressly so provided in the lease. The city of Wilmington, here mentioned, is a city of the sixth class, incorporated in 1905 under the general law. Subdivision 2 of section 862 of the Municipal Corporation Act gives such cities power to purchase or receive real estate inside or outside the city limits necessary for municipal purposes ''and to control, dispose of and convey the same for the benefit of the city or town; provided, they shall not have power to sell or convey any portion of any water-front.'' (Stats. 1909, p. 420.) Subdivision 2 of the same section empowers such cities ''to improve the water-front.'' The land included in the lease was, in part, submerged land always covered by water.

The city of Wilmington had no title to or interest in the land leased. It belonged to the state in virtue of its sovereignty, and no act ceding it or transferring it to the city has ever been passed. The city had nothing but a mere power to improve the water-front, a power delegated to it by the state. The power to improve the water-front does not include authority to lease to private parties for private uses lands belonging to the state and not covered by or necessary to the improvement, as a consideration for a water-front improvement to be made by such private parties for public use. The lease was clearly beyond the powers of the city and trans-

ferred no part of the state's title to the land nor any interest or estate whatever therein.

The case of *Pacific C. F. Co.* v. *Kimball*, 114 Cal. 414, [46 Pac. 275], is not in point. The lease there considered was made by the city of Monterey, under an express grant by the state to the city of all the water-front for the use and benefit of the city, with authority to lease portions of the water-front for periods not exceeding ten years. (Stats. 1867-8, p. 202.) The wharf right there in controversy was held good because of this grant and this power. In the present case there was no legislative authority to lease lands owned by the state. The decision in *San Pedro etc. Co.* v. *Hamilton*, 161 Cal. 610, [37 L. R. A. (N. S.) 686, 119 Pac. 1073], cited by these appellants in support of their claim, involved leases of submerged and tide lands, made by the cities of Long Beach and San Pedro, respectively, both of which leases were confirmed by the state by the act of March 23, 1907 (Stats. 1907, p. 987), and it was for this reason that the leases were held to be valid with respect to the authority to make them. The lease to the appellants was made after that act was passed, it is not validated or affected thereby and the state has never confirmed it. On the contrary, so far as it can do so, the state, by the act of May 1, 1911 (Stats. 1911, p. 1256), has revoked the appellants' lease by granting to the city of Los Angeles, to be used and managed for the public purposes of navigation, all the land embraced in said lease. The court below correctly held the lease to be void.

The judgment and order are affirmed.

Angellotti, J., Sloss, J., and Beatty, C. J., concurred.

Rehearing denied.