[L. A. No. 3568. In Bank.—April 4, 1916.]

# A. S. KOYER, Appellant, v. RANDOLPH H. MINER et al., Respondents.

TIDE-LAND—LEASE OF LAND WITHIN TWO MILES OF CITY—STATE MAY MAKE.—Notwithstanding the restriction of section 3 of article XV of the constitution that "all tide-lands within two miles of any incorporated city or town in this state, and fronting on the waters of any harbor, estuary, bay, or inlet, used for the purposes of navigation, shall be withheld from grant or sale to private persons, partnerships, or corporations," the state, through its legislative authority, may lease the tide and submerged lands within such two-mile limit, with proper restrictions of time and proper regard to public and *quasi*-public use, so that private enterprise and capital may build up the commerce of the seaport cities of the state.

ID.—SAN PEDRO BAY—LEASE OF RECLAIMED TIDE-LAND—LITTORAL OWNER MAY BE DEPRIVED OF ACCESS TO NAVIGABLE WATER.—The littoral owner of property fronting on the waters of the bay of San Pedro cannot complain of being deprived of access from his land to the navigable waters of the bay as the result of a valid lease made by the state of reclaimed land lying between the shore and the established harbor front.

ID.—CONTROL BY STATE IN AID OF NAVIGATION AND FISHERY.—The littoral rights of such owner cannot impinge upon the control by the state of tide-lands for the purposes of navigation and fishery, or affect the public easement for these purposes.

ID.—LEASE OF TIDE-LANDS BY CITY OF SAN PEDRO—ACT OF LEGISLATURE CONFIRMED.—The lease of certain of its tide-lands, made by the city of San Pedro on February 14, 1906, was confirmed and validated by the act of March 23, 1907, and the subsequent lease of July 23, 1907, was a mere correction of the previous lease, and was entirely within the rights which were secured by the lessee under the terms of the previous lease.

ID.—RAILROAD'S CONNECTION WITH NAVIGABLE WATER—STATE MAY PERMIT.—The state has power to permit a railroad company to build and operate a railroad over tide and submerged lands to a connection with deep-water navigation. Such a disposition of public land held in trust for purposes of navigation and commerce is in furtherance of the trust and not in violation of it.

ID.—USE BY RAILROAD OF RECLAIMED LAND—OWNER OF UPLAND CANNOT QUESTION.—An owner's interest in the upland gives him no right to attack the use made by a railroad company of such reclaimed tide-land, whether the use is under lawful authority from the state, or merely by its sufferance.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

Robert Young, for Appellant.

Lewis W. Andrews, Thos. O. Toland, Cedric E. Johnson, Gibson, Dunn & Crutcher, J. W. McKinley, Frank Karr, and H. H. Trowbridge, for Respondents.

Albert Lee Stephens, City Attorney, and Anderson & Anderson, on Petition for Modification of Opinion.

SHAW, J.—The transcript in this case embraces the record of two actions involving the same questions relating to the rights pertaining to two adjoining parcels of upland fronting upon the bay of San Pedro. One parcel belongs wholly to the plaintiff. In the other he has a one-half undivided interest. The southerly boundary of the two parcels is the line of ordinary high tide. The parcels are a part of a grant of land made by the government of Mexico prior to the treaty of Guadalupe Hidalgo, and afterward confirmed by the United States, and known as Rancho Los Palos Verdes. From said high-tide line into the bay the surface of the soil, prior to any artificial changes therein, descended gradually and on even grade to a depth of 24 feet below high tide at the distance of six thousand feet from said high-tide line. Plaintiff had never wharfed out into the bay from these parcels, or otherwise made any improvements or erected any structures for navigation to facilitate access to the bay from his land.

The complaint in each case alleges that the defendants, without right, claim interests in said lands, and that they have erected and maintained structures on the adjoining tide-land between plaintiff's land, and the navigable waters of the harbor of San Pedro, which prevent access thereto from plaintiff's land, and asks that plaintiff's title in said parcels be quieted, and that defendants be enjoined from maintaining said structures, or otherwise interfering with plaintiff's right of free access from his land to the navigable waters of the bay.

The defendant, Pacific Electric Railway Company, answered claiming the right to maintain and operate an electric railroad over the adjoining tide-land under a franchise granted by the city of San Pedro. The Southern Pacific Railroad Company answered claiming a right to maintain and operate its road over said tide-lands to navigable water under a franchise or permit from the state of California in pursuance of section 478 of the Civil Code, and also rights in the tide-land and land below tide-line, under a lease from the city of San Pedro to Randolph H. Miner, made on February 14, 1906, and an agreement made between them on February 7, 1906, which lease and agreement were confirmed by the legislature by the act approved March 23, 1907. (Stats. 1907, p. 987.)

Miner and the Outer Harbor Dock and Wharf Company, with other defendants claiming under them, answered alleging that the lease and agreement of Miner above mentioned, and his interests thereunder, had been by him assigned and transferred to the Outer Harbor Dock and Wharf Company, and claiming the rights given thereby from the state in the tide and submerged lands between plaintiff's land and deep water. This lease and agreement were given by the city as a means for improving the harbor of San Pedro, and facilitating navigation and commerce therefrom. The agreement provided that Miner and his successors should erect a seawall on the harbor-front line as soon as same was located by the federal government, should improve the same for purposes of navigation, should reserve a certain portion thereof to the city for a public harbor front, should fill in and reclaim the land between said front and the shore, and dedicate appropriate parts thereof to public use for streets, and that he and his successors should thereupon have the remainder of such reclaimed land in fee, or if the grant of a fee was not valid, that they should have a lease thereof for the term of fifty years. This lease was executed accordingly. Its validity is the principal question in the case.

The court found for the defendants, and particularly that the wharf company had erected the seawall and made the improvements contemplated by the Miner lease and agreement for purposes of navigation, and was devoting the same to public use for that purpose. As conclusions of law it declared that the state, through its authorized agencies, the city of

San Pedro, and the city of Los Angeles, which succeeded to San Pedro by annexing the latter, and said wharf company, have and had the right to use and improve the tide and submerged lands in front of plaintiff's parcels to fit the harbor for navigation, to the exclusion of plaintiff as an upland owner, and in doing so to cut off plaintiff's access to navigable water except, of course, over and along the public streets opened for that purpose in pursuance of the plan adopted for said improvements; that the defendants who claimed interests under the Miner lease and agreements or rights from the state in the tide and submerged lands were entitled to judgment enjoining plaintiff from asserting any interest therein and that plaintiff take nothing. Judgment was given accordingly. The plaintiff appeals from the judgment, and from an order denying his motion for a new trial.

None of the defendants claims rights in the tide and submerged lands in front of plaintiff's property under or by virtue of any grant or disposal thereof by the state as tideland in pursuance of the Political Code (secs. 3440 to 3493t) for the sale of swamp and overflowed, salt-marsh and tideland. All of them, as will be seen from the facts above stated, claim rights and interests derived from the state and granted in pursuance of the plan adopted by the state for the improvement of the harbor of San Pedro, and in furtherance of navigation by adapting said lands to the purposes of navigation.

Practically every question presented in this case is settled by decisions of this court made after the filing of the transcript on appeal herein, and after the filing of the opening brief. (*People* v. *California Fish Co.*, 166 Cal. 576, [138 Pac. 79]; *People* v. *Southern Pac. Co.*, 166 Cal. 614, [138 Pac. 94]; *People* v. *Southern Pac. Co.*, 166 Cal. 627, [138 Pac. 103]; *People* v. *Banning Co.*, 166 Cal. 630, [138 Pac. 100]; *People* v. *Banning Co.*, 166 Cal. 635, [138 Pac. 101]; *People* v. *Banning Co.*, 167 Cal. 643, [140 Pac. 587]; *Wheatley* v. *Consolidated Lumber Co.*, 167 Cal. 447, [139 Pac. 1057]; *Henry Dalton etc. Co.* v. *Oakland*, 168 Cal. 463, [143 Pac. 721]; *Patton* v. *Los Angeles*, 169 Cal. 521, [147 Pac. 141]; *People* v. *Southern P. R. Co.*, 169 Cal. 537, [147 Pac. 274]; *Knudson* v. *Kearney*, 171 Cal. 250, [152 Pac. 541].)

Section 3 of article XV of the constitution declares that "All tide-lands within two miles of any incorporated city or

town in this state, and fronting on the waters of any harbor, estuary, bay or inlet used for the purposes of navigation, shall be withheld from grant or sale to private persons, partnerships, or corporations." The land here in controversy lies either within the limits of the city of San Pedro, now Los Angeles, or within two miles thereof. Under the definition of "tide-lands," as given in *San Pedro etc. Co.* v. *Hamilton*, 161 Cal. 614, [37 L. R. A. (N. S.) 686, 119 Pac. 1074], the land embraced within the lease of Miner comes within the terms of this section of the constitution. In the case just cited it was held that under this section the state, through its legislative authority, may lease the tide and submerged lands within the two-mile limit, "with proper restrictions of time and proper regard to public and *quasi*-public use, . . . so that private enterprise and capital may build up the commerce of our seaport cities." The lease was, therefore, within the legislative power, and the Confirmatory Act of 1907 establishes it as a valid lease made under legislative authority. That the act had that effect was expressly decided in the case just cited. (See, also, *Wheatley* v. *Consolidated Lumber Co.*, 167 Cal. 447, [139 Pac. 1057]; *People* v. *Banning Co.*, 166 Cal. 630, [138 Pac. 100].) The judgment in this case in favor of the defendants was limited to the leasehold interest, and did not declare that they have an interest in fee. The question whether the state can alienate in fee lands included in the constitutional reservation which are found to be unnecessary and useless for purposes of navigation and commerce is, therefore, not involved.

With regard to the claim of littoral rights the case of *Henry Dalton etc. Co.* v. *Oakland*, 168 Cal. 463, [143 Pac. 721], is decisive. There the plaintiffs owned a tract of upland bordering upon navigable water in the harbor of Oakland, but, as in the case of the plaintiff here, had no ownership in the tide-lands fronting thereon. Its claim was that as a littoral or riparian owner of property fronting on the bay, and notwithstanding the fact that it did not own the tide-lands, the plaintiff had the right to free and unobstructed access over the tide-lands to navigable water, and the right to construct suitable landings thereon, and to enjoy exclusive use of such landings, subject only to the paramount public right of navigation. The court, following the decision in *People* v. *Southern P. R. Co.*, 166 Cal. 627, [138 Pac. 103], said that "when the

public authorities see fit to make improvements on the land
below high water mark for purposes of navigation the ripa-
rian owner must yield thereto. . . . The littoral rights of the
defendants'' (the plaintiff here) ''cannot impinge upon the
control by the state of tide-lands for the public purposes of
navigation and fishery, or affect the public easement for those
purposes.'' In conclusion the court said, ''If such improve-
ments have the effect of cutting off access over said tide-lands
from the upland of the plaintiff, it is no ground of complaint
because, as has been pointed out, it had no right as an upland
owner to the free and unobstructed access to navigable waters
over said tide-lands as against the right of the state to at any
time devote them to the improvement of the harbor of Oak-
land in aid of the public easement of navigation and com-
merce.'' (See, also, *Patton* v. *Los Angeles,* 169 Cal. 521, on
p. 526, [147 Pac. 141], and *People* v. *Southern Pac. R. R. Co.,*
169 Cal. 537, 541, [147 Pac. 274].) These decisions settle this
case so far as the riparian or littoral rights of the plaintiff
are concerned. The state had the undoubted right to make
the lease in question in order to procure the erection of a
seawall with docks and slips and the improvements to be
made to obtain public access to deep water, the better to fit
the harbor for navigation. As an incident to this right it
cannot be denied that it has the right to grant to the person
making the improvements and as a consideration therefor, a
lease for fifty years of the reclaimed land lying between the
shore and the harbor front, including the land below the line
of ordinary high tide, and all the land not necessary for use
in furtherance of navigation. As the harbor front improve-
ments rightfully cut off access from the plaintiff's land to the
waters of the bay, and as plaintiff had no other littoral right
by virtue of this ownership of the upland, nor any other right
whatever in the tide and submerged lands, it follows that he
cannot be heard to complain of any disposition made by the
state of such tide and submerged lands. The only interest he
had therein was rightfully terminated by the harbor improve-
ments, and as a private citizen he had no right to question
the use to which the state was devoting such tide-lands. If
the use thereof for private purposes had inflicted damage on
his upland, other than that of cutting off his littoral right of
access, perhaps he might have had a cause of action on that

account, but nothing of this kind is averred and no such question is presented.

The plaintiff claims that the lease under which the defendants hold was made after the Confirmatory Act of March 23, 1907, and that, therefore, under the decision in *People* v. *Banning Co.*, 166 Cal. 630, 634, [138 Pac. 100], said act did not apply to or confirm the same. It may be doubted whether even if this were so, the plaintiff has shown any right to maintain the action on account of the ensuing purpresture. It is not necessary to consider this question, for we are satisfied that the lease was within the Confirmatory Act. It was executed on February 14, 1906, more than a year before the passage of the Confirmatory Act. The claim that it is not within the terms of the act is based on the fact that subsequently, on July 23, 1907, the city of San Pedro and the wharf company, as successor of Miner, entered into another indenture of lease. This instrument recites the agreement of February 7, 1906, the lease of February 14, 1906, and the fact that after the execution of said instruments the United States government laid out the harbor line in the bay of San Pedro, on courses differing slightly from the harbor lines as described in said agreement. Thereupon, the instrument declares that the lease of 1906 is re-executed, and that the description of the harbor line is rewritten to make the line of the seawall correspond with the line as afterward established by the United States. The contention is that this was substantially a new lease which, having been made after the Confirmatory Act, was not within its terms and, consequently, utterly void. While it did in fact contain other provisions and terms not included in the former lease, it did not change it, nor purport to change it, with respect to the boundaries of the land leased. The original lease referred to the agreement and made it a part thereof. The agreement provided that if the United States required the seawall to be built upon other lines than those therein described, the lessee should thereupon have the right to have said lease rewritten and re-executed so as to correctly describe the line in accordance with the change in the seawall line. It was, in effect, a lease of the lands between the shore and the harbor line as thereafter fixed by the United States. The subsequent lease was, therefore, a mere correction of the previous lease and was entirely within the rights which were secured by the lessee under the terms of the

previous lease. The new stipulations may possibly be void so far as they purport to be adverse to the public use. But if so, they do not destroy the old lease, and that instrument remains in force and covers the land up to the harbor line as finally located.

Even if it were supposed that a third person could attack a lease given by the state, of land in which he has no interest, on the ground that it was made without consideration, or that this fact would affect the validity of a lease, in any case, there is no foundation for the assertion of the fact. The evidence and the findings show that the wharf company expended nearly a million and a half dollars in making the seawall, docks, and channels to deep water for the public use, as it had agreed to do, as a consideration for the lease.

That the state had power to permit the Southern Pacific Railroad Company to build and operate a railroad over tide and submerged lands to a connection with deep-water navigation, is not seriously disputed. Such a disposition of the public land held in trust for purposes of navigation and commerce would be in furtherance of the trust and not in violation of it, and is undoubtedly valid. (*San Pedro* v. *Southern P. R. Co.*, 101 Cal. 336, [35 Pac. 993] ; *Santa Cruz* v. *Southern P. Co.*, 163 Cal. 549, [126 Pac. 362] ; *Arcata* v. *Arcata etc. Co.*, 92 Cal. 645, [38 Pac. 676].)

With regard to the Pacific Electric Railway Company we need say nothing more than that the plaintiff's interest in the upland gives him no right to attack the use made of the reclaimed tide-land, whether such use is under lawful authority from the state, or merely by its sufferance. There are no other points that deserve consideration.

In each case the judgments and orders are affirmed.

Sloss, J., Lawlor, J., Henshaw, J., Melvin, J., and Angellotti, C. J., concurred.

Application for modification of opinion denied.