[S. F. No. 8562.  In Bank.—November 4, 1918.]

CITY OF OAKLAND (a Municipal Corporation), Appellant, v. LARUE WHARF AND WAREHOUSE COMPANY (a Corporation), Respondent.

LEASES—TIDE-LANDS—LEASE BY CITY OF OAKLAND—ACT OF 1911.—A lease by the city of Oakland of tide-lands along the estuary of San Antonio, forming a part of its southern boundary, to a corporation which has been in possession of such lands for many years, claiming ownership under the "Stratton Patent," which corporation upon the execution of the lease quitclaimed all rights to the property except those provided by the lease, was valid under the act of May

1, 1911 (Stats. 1911, p. 1254), by which act the state of California transferred all its rights in said lands to the city of Oakland upon certain conditions and trusts, where such lease was in precise conformity with the terms of the statute and provided that the lands might be used "for purposes for which they were then being used . . . but for no other purpose which would interfere with navigation or commerce."

Id.—Purpose of Act.—While it was the general and ultimate purpose of the statute in granting water front lands to the city of Oakland, under the act of May 1, 1911, to bring about the development of the harbor with its increased facilities for navigation, it was the intent of the act to enable the city of Oakland, as the grantee of these lands, to make compromises with such private persons as might be possessed of portions of the lands so conveyed to it under whatever claim of right or title, by making such leases to such persons as would permit the continued occupation and use of the parts thereof occupied by them for the period of twenty-five or even fifty years, conditioned upon their surrender of whatever claim of title they were asserting in the premises to the city, the only limitation upon the prospective lessees being· that they might "use the premises leased for any and all purposes which shall not interfere with navigation or commerce, but for no purpose which would interfere with navigation or commerce."

Id.—Term of Lease—Validity of.—Where such a lease is drawn in exact conformity with the provisions of the statute, it is not for the courts to say that it is void because its term is too long.

Id.—Authority to Execute Lease — Execution by Board of Public Works.—The execution of such a lease on behalf of the city of Oakland by its board of· public works under and· by virtue of an ordinance of the city council expressly authorizing and directing said board to enter into and execute such lease was a legal execution of the same under the terms of the city charter of 1889, and the amendments thereto of 1909, and said statute of 1911.

APPEAL from a judgment of the Superior Court of Alameda County. Everett J. Brown, Judge. Affirmed.

The facts are stated in the opinion of the court.

Paul C. Morf, De Lancey C. Smith, and John J. Earle, for Appellant.

Guy C. Earl, W. H. Spaulding, and Chaffee E. Hall, for Respondent.

RICHARDS, J., *pro tem.*—This is an appeal by the plaintiff from a judgment in the defendant's favor in an action to quiet title to certain lands lying along the estuary of San Antonio, which forms a portion of the southern boundary of the city of Oakland. The defendant, while admitting title in the plaintiff to said lands, claims a leasehold interest therein, which claim the trial court sustained. The facts of the case are practically undisputed, and the questions of law involved are those arising out of certain transactions between the plaintiff and the defendant in the course of which the latter's alleged leasehold interest in the premises is claimed to have been created.

Prior to May 1, 1911, the tide-lands upon this estuary, including the premises in question, were the property of the state of California, although upon said first day of May, 1911, and for many years prior thereto, the defendant and its predecessors in interest had been in possession of said premises claiming to be the owners of the same under an instrument designated as the "Stratton Patent," which the appellants herein claim to have been wholly void as a muniment of title. During these prior years the defendant and its predecessors had placed and maintained certain improvements upon the property, consisting of a wharf over which some small amount of traffic moved, and a yacht clubhouse, for the use of which rents in a small amount were collected. On May 1, 1911, the state of California, by an act of the legislature of said date (Stats. 1911, p 1254), transferred to the plaintiff herein all of its right, title, and interest in the lands lying along said estuary, including the premises in question, subject to certain conditions and trusts specified in said act, among which were the following provisions having an important bearing upon the instant case:

"That said lands shall be used by said city and its successors, only for the establishment, improvement and conduct of a harbor, and for the construction, maintenance and operation thereon of wharves, docks, piers, slips, quays and other utilities, structures and appliances necessary or convenient for the promotion and accommodation of commerce and navigation, and said city, or its successors, shall not, at any time, grant, convey, give or alien said lands, or any part thereof, to any individual, firm or corporation for any purposes whatever; *provided,* that said city, or its successors,

CLXXIX Cal.—14

may grant franchises thereon, for limited periods, for wharves and other public uses and purposes, and may lease said lands, or any part thereof, for limited periods, for purposes consistent with the trusts upon which said lands are held by the state of California, and with the requirements of commerce or navigation at said harbor, for a term not exceeding twenty-five years, and on such other terms and conditions as said city may determine, including a right to renew such lease or leases for a further term not exceeding twenty-five years or to terminate the same on such terms, reservations and conditions as may be stipulated in such lease or leases, and said lease or leases may be for any and all purposes which shall not interfere with navigation or commerce, with reversion to the said city on the termination of such lease or leases of any and all improvements thereon, and on such other terms and conditions as the said city may determine, but for no purpose which will interfere with navigation or commerce; subject also to a reservation in all such leases or such wharfing-out privileges of a street, or of such other reservation as the said city may determine for a belt line railroad where the same may be deemed necessary by the said city; and such other reservations as the city may require, and for sewer outlets, and for gas and oil mains, and for hydrants, and for electric cables and wires, and for such other conduits for municipal purposes, and for such public and municipal purposes and uses as may be deemed necessary by the said city; *provided, however,* that each person, firm or corporation or their heirs, successors or assigns now in possession of land or lands abutting on said lands, within the boundaries of the city of Oakland, lying and being southerly from the southern line of East Fourteenth Street in said city of Oakland and easterly from the eastern limits of the former town of Oakland as hereinbefore firstly described, and lying and being westerly from the easterly boundary line of the city of Oakland as it existed in A. D. 1908, shall have a right to obtain a lease for a term of twenty-five years from said city of said land and wharfing-out privileges therefrom with a right of renewal for a further term of twenty-five years pursuant to the provisions of this act and on such terms and conditions as said city may determine and specify, subject to the right of said city to terminate said lease at the end of the first twenty-five years, or refuse to renew the

same, or to terminate the lease so renewed during the term of such renewed lease on such just and reasonable terms for compensation for improvements at the then value of said improvements as said city may determine and specify. Upon obtaining such lease and wharfing-out privileges such person, firm or corporation, their heirs or assigns, shall quitclaim to said city any right they or any of them may claim or have to the said lands hereby granted.''

In the month of June, 1911, the city of Oakland, through its council, in an attempted compliance with the foregoing provisions of the statute, passed an ordinance purporting to authorize the board of public works of said city to make and execute leases of the lands so conveyed by the state to said city, including the premises in question, to the parties in possession thereof; and thereafter and on June 28, 1911, the said board of public works by formal resolution authorized the making of the lease to the defendant under which it claims to have its leasehold interest in said premises. On June 30, 1911, said lease was executed by its signature, both by the defendant and by the members of the board of public works, individually and on behalf of the plaintiff, purporting to act under the authority conferred upon them so to do; and the said defendant, at the time of the execution and delivery of said lease, executed and delivered to the plaintiff a quitclaim deed to all of its right, title, and interest to the premises in question, except such as was created by said lease, since which time it has paid to said plaintiff the rents required by said lease to be by it paid, which the plaintiff has regularly received, and no part of which has ever been refunded to the defendant, nor has the plaintiff ever offered to reconvey to the defendant such interest in said premises, if any, as it acquired by the defendant's quitclaim deed to it. Since the execution of the lease to it by the plaintiff the defendant has made, with the plaintiff's knowledge and consent, certain permanent improvements upon the premises covered by its said lease at an expense to it of approximately six thousand dollars, no part of which has been refunded or offered to be refunded by the plaintiff, and has also maintained thereon the wharf previously erected, over which some small amount of traffic is conducted. Notwithstanding the foregoing admitted facts the plaintiff has instituted this action to quiet its title to the premises, its contention being

that the defendant's purported lease is utterly void, its attack upon its validity being based upon two grounds: 1. That its requirements do not satisfy the requirements of the statute of 1911, which is the source of the authority of the plaintiff to make the same; and 2. That its execution was never legally authorized or effectuated by the municipal officials vested with authority to execute such a lease. The trial court found against the plaintiff's contention as to both of these grounds, and rendered its judgment accordingly in the defendant's favor. Both of the foregoing grounds of the alleged invalidity of said lease are urged by the appellant upon this appeal.

As to the first of the foregoing reasons for the alleged invalidity of the lease in question the contention of the appellant is this: That the purpose of the state of California in the enactment of the statute of 1911 by which the city of Oakland was granted the lands along the said estuary, including the premises in question, was to insure the development of a harbor through the use of the lands conveyed by said grant in such a manner as would tend to promote commerce and navigation, and that this being so, whatever leases were contemplated or authorized by the terms of said act must be such as would effectuate said purpose, and hence must have contained provisions making the use and improvement of the lands by the lessees thereof along lines conducive to such purpose obligatory and not optional on the part of such lessees; and that this not having been done in respect to the form and terms of the lease in question here, it is void as in violation of the spirit and purpose of the act authorizing its execution. We are unable to agree with the appellant's contention in the above regard to the extent of giving to the terms of the act of 1911 such an interpretation as would render a lease, couched in the language of the instrument under which the respondent claims a leasehold interest in the land in question, void. Reading the legislative act in its entirety, it is quite evident that while it was doubtless the general and ultimate purpose of the state in granting these waterfront lands to the city of Oakland to bring about the development of a harbor with its increased facilities for navigation, it was recognized that there were certain obstacles in the way of an immediate realization of these objects, consisting in the fact that there were various

private parties in possession of these lands, some of whom, including the respondent herein, were claiming ownership in specific portions of said lands under muniments of title which, whether of some or of no value or validity, might furnish the bases of litigation more or less prolonged in character, which would probably interfere with the realization for an uncertain period of the purposes for which said grant was made. The act, therefore, embodied the provisions above quoted, which were plainly intended to enable the city of Oakland as the grantee of these lands to make compromises with such private persons as might be possessed of portions of the lands so conveyed to it under whatever claim of right or title, by making such leases to such persons as would permit the continued occupation and use by them of the parts thereof occupied by them for the period of twenty-five or even fifty years, conditioned upon their surrender of whatever claim of title they were asserting in the premises to the city. The only limitation upon the purposes for which these prospective lessees of the premises they had theretofore occupied was that they might "use the premises leased for any and all purposes which shall not interfere with navigation or commerce, but for no purpose which will interfere with navigation or commerce." It may not be doubted that if the occupants of such premises were at the time of the passage of said act or the making of said lease occupying and using the same for purposes which were inconsistent with the trust in which the state had held these tide-lands under the terms of article XV of the constitution and subject to which the legislative grant to the city of Oakland was made, no lease of the same by or on behalf of said city would be valid in so far as it would undertake to authorize or permit the continued devotion of said lands to such inconsistent uses, nor could it be contended that if after the making of such a lease as that in question here, the lessees should undertake to occupy or use said premises in such manner or for such purposes as would be inconsistent with the terms of said trust and with the development of commerce and navigation in said harbor, the state, and its successor in interest, the city of Oakland, would have the right to institute such proceedings as might be proper or necessary to compel a cessation of the use of said lands for such inconsistent purposes, even to the extent of an avoidance of said lease. It

may, however, be proper to state in this connection that "when the plan or system of improvement or development adopted by the state for the promotion of navigation and commerce cuts off a part of these tide-lands or submerged lands from the public channels, so that they are no longer useful for navigation, the state may thereupon sell and dispose of such excluded lands into private ownership or private uses, thereby destroying the public easement in such portion of the lands and giving them over to the grantee, free from public control and use." (*People* v. *California Fish Co.,* 166 Cal. 576, [138 Pac. 79]; *Knudson* v. *Kearney,* 171 Cal. 250, [152 Pac. 541].) But none of these conditions is presented by the record before us. The undisputed evidence shows that both before and since the execution of its lease the uses to which the respondent has been and is devoting such portions of the premises as are in use are such as are consistent with the general purposes for which the city of Oakland was given its grant of said lands and do not constitute an interference with, but rather to the extent of such use an aid to navigation and commerce. It may be that such uses are limited, and that the term of said lease and of its possible extension seems unduly long, but as to the former we fail to find in the record before us facts sufficient to warrant a conclusion that a more extended utilization of these premises would be practicable or profitable in the present state of development of Oakland waterfront possibilities; or that a lease which would have compelled a more extended use of the premises in the way of promoting navigation and commerce would have been accepted by the defendant; or that they would have surrendered their claims of ownership of the premises for a lease more drastic and compelling in its requirements as to the uses to which the property should be presently devoted. We are given no reason to doubt from the record before us that the defendant, as the development of the commercial and navigation uses of the harbor demand it will so increase their uses of said property as to fully effectuate the purposes contemplated by the state in making its grant. With respect to the term of the lease, it is drawn in exact conformity with the provisions of the statute, and it is not for the courts to say that the lease is void because its term is too long.

The only case cited by the appellant which seems to bear remotely upon the question of the power of the city of Oakland to authorize the execution of the lease in question is the case of *Weekes* v. *City of Galveston,* 21 Tex. Civ. App. 102, [51 S. W. 544], wherein a lease by the city of Galveston of Pelican Island and its flats to private parties with no other limitation than that the property should not be used to the injury of the harbor was held to be invalid. The marked distinction, however, between that case and the case at bar consists in the fact that in the legislative grant of Pelican Island to the city of Galveston no provision for the leasing thereof for any purpose was embodied, and hence the court very properly held that the grant to the city of the island in its harbor was for public purposes which would not be conserved by its unrestricted lease for private uses. In each of the recent California cases cited by appellant, viz., *San Pedro etc. Co.* v. *Hamilton,* 161 Cal. 610, [37 L. R. A. (N. S.) 686, 119 Pac. 1073], and *Koyer* v. *Miner,* 172 Cal. 448, [156 Pac. 1023], this court upheld the leases in question, and in the former case expressly approved the policy of making such leases of waterfront lands as would tend to interest private capital in the improvement of harbors, the case of *Pacific Coast S. S. Co.* v. *Kimball,* 114 Cal. 414, [46 Pac. 275], being cited as illustrative of the beneficent effects of this policy, although in that case the lease was of lands fronting on Monterey Bay for the construction and operation of a wharf for private use, the theory of this latter case as expressed therein being that the lease therein upheld was promotive of commerce and navigation. It is also to be noted that in each of the cases of *San Pedro etc. R. R. Co.* v. *Hamilton, supra,* and *Koyer* v. *Miner, supra,* the leases in question did not expressly specify or require that the lands so leased must be used for any particular purpose promotive of commerce and navigation. Both leases were nevertheless upheld, the court in each case holding that the state had power under the terms of the constitution to make leases of tide and submerged lands, "with proper restrictions of time and proper regard to public and quasi-public use . . . so that private enterprise and capital may build up the commerce of our seaboard cities."

Our conclusion upon this branch of the case is that the lease in question having been drawn in precise conformity with

the terms of the statute of 1911, which in its grant of these waterfront lands to the city of Oakland expressly provided for the making of such leases, and having incorporated in it the express provision that the lands so leased might be used "for the purposes for which they were then being used . . . but for no other purpose which will interfere with navigation or commerce," was a valid exercise of the powers thus given by the statute to the city of Oakland to make such leases in so far as its provisions are concerned.

The next contention of the appellant is that the lease is invalid because not executed by the proper officials of the city of Oakland having power to execute such leases. The lease in question was, as we have seen, executed by the board of public works of the city of Oakland and by the individual members thereof under and by virtue of an ordinance of the council of said city expressly authorizing and directing said board of public works to enter into and to execute said lease. The appellant, however, contends that the city council had no right to delegate to the board of public works the authority to make said lease, and that the board of public works had no power to make the same. The argument of the appellant in support of this contention is that under the terms of the charter of the city of Oakland of 1889 and the amendment thereto made in 1909, the legislative powers of the city are exclusively conferred upon the city council, and that the act of making leases of the lands of the city being legislative in character, cannot be legally delegated to any other board or officer of the city. Without attempting to review all of the various provisions of the said charter of Oakland relating to the exercise of legislative powers by the several boards and officials of said city, it may be generally stated that the exercise of legislative functions, especially in the matter of making leases, is not conferred by its terms exclusively upon the city council. The board of library trustees of the city, for example, are expressly empowered "to rent" such buildings as may be needed for their uses under certain conditions. The park commissioners are also empowered to lease for a limited period buildings and park grounds under their control. Again, subdivision 47 of section 31 of said charter having reference to the powers of the city council in the matter of making leases of municipal property, invests the city council with power "to regulate the custody, *leasing* and sale of

all the property of the municipality," and it would seem to be quite clear that under the terms of this subdivision the city council would have power to provide that as to the matter of the execution of such leases of the city property as it had properly determined should be made, the city council might designate any appropriate board or officer of the city to perform the manual duty of signing and executing the instrument itself. It is also to be noted that by the amendment to the city charter made in 1909, the board of public works were given certain enlarged powers in relation to the waterfront properties owned by the city. The amendment, so far as pertinent, reads as follows:

"The Board of Public Works shall, subject to such ordinances as the council may from time to time adopt, have full power to regulate, control, operate and manage the use of the waterfront of the City of Oakland, and all wharves, docks, slips, warehouses, railroads and other improvements thereon; . . . to collect rents . . . due the city for the use of the waterfront, or any portion thereof or improvements thereon."

While not undertaking to decide whether the last above-quoted provision of the city charter would of itself be sufficient to confer authority upon the board of public works to enter into and execute the lease in question, we are of the opinion that taking into consideration the several foregoing provisions of the city charter of 1889 and the amendments thereto made in 1909, under which the lease in question herein was made, it was a proper exercise of the powers of the city council thereunder and under the terms of the statute of 1911 to have enacted the ordinance directing the making of said lease and authorizing the board of public works of said city to execute the same, and that said lease as thus executed in precise conformity with the terms of said statute and of such ordinance is in all respects valid, and was properly decided so to be by the judgment appealed from herein. This being so, the other alleged errors of law occurring at the trial become immaterial and do not merit separate consideration.

Judgment affirmed.

Shaw, J., Sloss, J., Wilbur, J., Melvin, J., and Angellotti, C. J., concurred.