[Civ. No. 11898.   First Dist., Div. One.   Apr. 17, 1944.]

THE LOS ANGELES ATHLETIC CLUB (a Corporation), Appellant, v. CITY OF SANTA MONICA, Respondent.

David E. Hinckle for Appellant.

O'Melveny & Myers, Louis W. Myers and Jackson W. Chance as Amici Curiae on behalf of Appellant.

Cornelius W. McInerny, Jr., City Attorney, Hill, Morgan & Bledsoe, Kenneth K. Wright, Vincent Morgan and Stanley S. Burrill for Respondent.

PETERS, P. J.—The Los Angeles Athletic Club instituted this action against the city of Santa Monica for damages for

the alleged injury to its real properties caused by the building of a breakwater by the city in the harbor. The action arose out of the construction of the same breakwater discussed in *Carpenter* v. *City of Santa Monica,* Civ. 11986, this day decided (*ante,* p. 772 [147 P.2d 964]). Most of the legal problems involved are identical with those discussed in that case. As was done in the Carpenter case, the parties stipulated that the issue as to liability should be tried separately from the issue of damages, this last issue to be tried only in the event it was held there was liability. Inasmuch as the trial court determined that the city was not liable for the alleged damage, the issue as to the amount thereof was not tried. There is, however, one factual distinction between the two cases. In the Carpenter case, *supra,* the appellant complained of erosion caused by the breakwater; in the instant case the appellant complains that its beach properties were rendered less valuable by accretions caused by the breakwater.

The appellants, in 1929 and 1930, acquired two beach club properties within the city limits of Santa Monica, one known as the Santa Monica Athletic Club and the other as the Santa Monica Deauville Club. These properties are about 550 feet apart, and each has been improved with a beach club building and equipment, and each is used as a single beach club enterprise. The seaward boundary of each parcel is the mean high tide line of the Pacific Ocean. A survey of the shore line had been made by the city engineer of Santa Monica in 1921. For the purpose of determining liability it was stipulated that the line of mean high tide as established by that survey was the mean high tide line as of 1921, and was the seaward boundary of the appellant's properties as of that date. The evidence shows, and the court found, that in 1911 or 1912 there was constructed, about 250 feet southeasterly of the Deauville property, a municipal pier, 30 feet wide, and extending into the ocean. Adjacent to this pier on the southeast side is a privately owned pier known as the ''Pleasure Pier,'' which is 300 feet wide, and which extends into the ocean for a considerable distance. Between 1921 and prior to July, 1933 (the last date being when construction of the breakwater commenced), these two piers, together with certain concrete debris dumped into the ocean when the municipal pier was rebuilt, so interfered with the littoral drift that it caused accretions to attach themselves to appellant's properties seaward of the 1921 line. These accretions, so

caused, averaged between 50 to 155 feet in width, and all occurred as the result of the construction of the two piers and the debris above mentioned.

In 1917 the Legislature granted the tide and submerged lands within its boundaries to the city of Santa Monica, upon certain trusts and conditions set forth in the Carpenter case, *supra*. Purporting to act under the trusts thus created, the respondent commenced the construction of a breakwater in July of 1933. This breakwater was of the rock mound type, was about 2,000 feet long and was constructed parallel to the shore and about 2,000 feet from the 1921 line. Both of appellant's properties are behind this breakwater. The breakwater was completed in July of 1934. The breakwater further interfered with the wave action and the littoral drift, so that, subsequent to its construction, further accretions were formed by imperceptible degrees to the lands in front of appellant's properties. These accretions formed so rapidly that by May, 1939, the mean high tide line had moved seaward from the 1933 line about 277 feet at the northwesterly line of the Santa Monica Athletic Club property and about 588 feet at the southwesterly line of the Deauville property. At one point in front of the Deauville property the mean high tide line moved oceanward 667 feet between 1933 and 1939. The accreting continued beyond 1939, but at a slower rate.

The trial court, as did the trial court in the Carpenter case, found that in constructing the breakwater the city acted in its governmental capacity and in the exercise of its police power, exercised for the purpose of protecting its harbor and property, and to promote and accommodate commerce and navigation, and held that any damage suffered by appellant by the construction of the breakwater was *damnum absque injuria*. However, the trial court also relied upon an entirely different theory. It found that the seaward boundary of appellant's properties was the line of mean high tide as established by the 1921 survey; that the area formed by the artificial accretions that accrued in front of appellant's properties between 1921 and 1933 "was not owned by the said plaintiff but was land which had been built up by artificial accretions during the years between 1921 and 1933"; that the area created by the artificial accretions that formed prior to 1933 belongs to the city and does not belong to appellant; that because there existed this artificially accreted area between

the seaward boundary of appellant's properties and the ocean prior to 1933 when construction of the breakwater commenced, appellant's properties at that time were not littoral properties; that the artificial accretions caused by the breakwater between 1933 and 1939 attached themselves not to appellant's properties but to the accreted tidelands already existing in front of appellant's properties. The court's findings on this issue are summarized in the following portion of Finding XI: "The court further finds that at the time of the commencement of the construction of said breakwater the said plaintiff's lands, described in plaintiff's third amended complaint, were not littoral lands in that they did not border upon the line of mean high tide of the Pacific Ocean and further finds that all of the deposits of accretions complained of were upon tidelands and submerged lands owned by the said defendant by virtue of the act of the legislature of the State of California hereinbefore referred to in these findings, and that at no time did the said plaintiff have any right, title or interest in and to said tidelands or submerged lands." If this last theory is correct it is unnecessary to pass upon the correctness of the other theories relied upon by the trial court, because the last named theory alone sustains the judgment.

▉ Appellant's position on this appeal is that the artificial accretions that attached themselves to its properties between 1921 and 1933 belonged to it; that the artificial accretions that formed by reason of the construction of the breakwater and which attached themselves to the already artificially accreted area likewise belonged to it; that these last mentioned accretions were forced upon it by the acts of the respondent and against the will of appellant, and after appellant had warned the city of the effect on its properties of the construction of the breakwater; that these last mentioned accretions, although increasing the area of appellant's properties, have rendered such properties less valuable for the purposes for which they are intended and for which the improvements thereon have been designed to appellant's damage in a large amount.

The basic premise of this argument is, of course, that appellant's properties were littoral lands in 1933 and 1934 when the breakwater was constructed. Unless such lands were then littoral lands appellant cannot legally complain of any acts committed by the city that did not affect its properties. As

already pointed out, in 1933 there was a strip of land varying in width from 50 to 155 feet seaward of the 1921 line of mean high tide that had been formed by artificial accretions caused by the construction of the municipal and so-called "Pleasure" piers, and by the dumping of debris into the ocean near the municipal pier. Appellant does not complain of these accretions, but claims the area so formed as part of its properties. For reasons fully discussed in the Carpenter case, *supra*, it is obvious that this artificially accreted area does not belong to the appellant but belongs to the city as grantee of the state. For the reasons stated in and upon the authority of the Carpenter case, *supra*, it must be held that in 1933 appellant's properties no longer bordered upon the sea, but bordered upon this artificially accreted area owned by the city. Appellant's properties were not, in 1933, littoral lands. This being so, appellant has no legal grounds to complain of the construction of the breakwater and was not legally damaged by the further accretions.

Although appellant does not complain of the 1921-1933 accretions, it should be pointed out that it has no legal ground of complaint because it was thus cut off from contact with the sea. It is well settled that the littoral rights of an upland owner who owns no title to tidelands adjoining his property are subject to termination by whatever disposition of the tidelands the state, or its grantees, in the exercise of their trust, choose to make. (*Boone* v. *Kingsbury*, 206 Cal. 148 [273 P. 797]; *City of Newport Beach* v. *Fager*, 39 Cal.App.2d 23 [102 P.2d 438]; *People* v. *California Fish Co.*, 166 Cal. 576 [138 P. 79]; *City of Oakland* v. *Buteau*, 219 Cal. 745 [29 P.2d 177]; *People* v. *Southern Pac. R. R. Co.*, 166 Cal. 627 [138 P. 103]; *People* v. *Banning Co.*, 167 Cal. 643 [140 P. 587]; *Henry Dalton & Sons Co.* v. *Oakland*, 168 Cal. 463 [143 P. 721]; *Koyer* v. *Miner*, 172 Cal. 448 [156 P. 1023]; *Muchenberger* v. *City of Santa Monica*, 206 Cal. 635 [275 P. 803].)

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 16, 1944. Curtis, J., Carter, J., and Schauer, J., voted for a hearing. Edmonds, J., did not participate therein. Spence, J., acted pro tem.