[Civ. No. 21549.   First Dist., Div. Two.   Nov. 16, 1964.]

SOUTH SHORE LAND COMPANY, Plaintiff, Cross-defendant and Respondent, v. ELINOR E. PETERSEN, Defendant and Appellant; CAROL E. HECHE, Defendant, Cross-complainant and Appellant.

Elinor E. Petersen, in pro. per., for Defendant and Appellant.

Carol E. Heche, in pro. per., for Defendant, Cross-complainant and Appellant.

Weinmann, Rode, Burnhill & Moffitt and Ralph N. Mendelson for Plaintiff, Cross-defendant and Respondent.

AGEE, J.—Defendants appeal from a judgment quieting title in plaintiff to six tideland lots lying south of and substantially adjacent to the line of ordinary high tide of San Francisco Bay where it abuts the southern shore line of the City of Alameda.

In 1871 these lots were sold at public sale pursuant to a statute enacted shortly prior thereto. (Stats. 1867-1868, p. 716 et seq., as supplemented by Stats. 1869-1870, p. 541 et seq.)

The first deed in respondent's chain of title to each of the six lots is a deed thereof from the Board of Tide Land Commissioners of the State of California to the purchaser or purchasers at such sale. Subsequent deeds introduced in evidence show a complete and unbroken chain of title to the six lots to be in respondent.

All of these deeds describe the northern boundary of each of the lots as the line of ordinary high tide of San Francisco Bay. However, in order to eliminate minor disputes as to the exact location on the ground of such tide line, the judgment adopts a line which in some instances is below or to the south

of the line of ordinary high tide but which *never* extends above or to the north of said tide line.

The basis of appellants' claim of interest in the tidelands of the "Island of Alameda," upon which the City of Alameda is situated, is the same as that related in *Petersen* v. *United States,* 327 F.2d 219 (January 17, 1964) and need not be repeated in this opinion. The appellants are the same in both actions. The reclaimed land involved in the other action is part of the Alameda Naval Air Station and is west of the land involved herein.

■ For the same reasons as set forth by the United States Court of Appeals in the cited decision, we conclude that the United States patent issued to Antonio Peralta in 1874, rather than the Spanish grant of 1820 issued to his father, Don Luis Peralta, is "the title deed from which any subsequent owner had to trace his ownership" and that this patent "plainly and unambiguously excluded from its coverage any land covered by the waters of the bay." (*Petersen* v. *United States, supra,* at p. 221.)

Thus, whatever interest appellants may have acquired under the Spanish grant of 1820, as defined and limited by the subsequent patent issued by the United States, did not extend beyond or to the south of the line of ordinary high tide involved herein.

■ Appellants attempt to avoid the effect of this limitation with the argument that the artificial filling in of the subject lots, after being acquired by respondent, eliminated the old line of ordinary high tide and thereby gave them, as holders of an interest in the upland property, an interest in the reclaimed tideland up to the newly created line of ordinary high tide.

Assuming, *arguendo,* that appellants have any interest in the upland property, they did not by reason thereof acquire any interest in the tidelands artificially filled.

Although it is true that an owner of upland may see the quantity of his land increased by natural accretion, that is, by the action of tides washing soil up along the shoreline, it is settled that such owner, having no rights or title in the tidelands, acquires no interest therein when they are filled by *artificial* means. (*People* v. *Hecker,* 179 Cal.App.2d 823, 840 [4 Cal.Rptr. 334]; *Los Angeles Athletic Club* v. *City of Santa Monica,* 63 Cal.App.2d 795, 799 [147 P.2d 976]; 52 Cal.Jur.2d 445, 446.)

■ Appellants also question the authority of the State of California to make the original sales of the subject lots. There

were no restrictive legislative or constitutional provisions in the year 1871 which in any way prohibited these sales. The Supreme Court, in *Ward* v. *Mulford* (1867) 32 Cal. 365, 372, had but recently affirmed the state's ownership of lands covered and uncovered by the flow and ebb of the neap or ordinary tides. Where these lands were of no possible use for navigation or public use, the court stated: "Such lands the State may undoubtedly grant in private ownership for the purposes of reclamation and use, for by such a course no right of the public to their use for the purposes of navigation would be prejudiced." (See also, *People* v. *California Fish Co.*, 166 Cal. 576, 585-586 [138 P. 79].)

It was under this state of the law that the legislation earlier referred to above was enacted and the sales in question made. Any subsequent legislation did not affect or attempt to affect the validity of these sales.

Appellants also assert that the deeds executed in 1871 by the Tide Land Commissioners were invalid in that they were not "sealed with the great seal of the State, signed by the Governor and countersigned by the Secretary of State," as provided in the California Constitution of 1849 with respect to "grants and commissions." (Art. V, § 15.)

The subject property was held by the State in its proprietary capacity and, as we have seen, it was subject to disposal by sale to private owners. The State makes no claim that the deeds in question were not effective for that purpose nor does the State seek to regain the land.

Appellants' failure to prove their chain of title was not in any way connected with the validity or invalidity of the commissioners' deeds to respondent's predecessors. Appellants had never been in possession of the subject property and their claim of interest was dependent entirely upon the United States patent of 1874. As stated above, this patent expressly excluded the subject property and thus destroyed appellants' chain of title originating with the Spanish grant of 1820.

Moreover, any action to cancel the deeds of the commissioners or to claim the property for the State would be subject to the bar of the 10-year limitation period provided for in section 315 of the Code of Civil Procedure. (*People* v. *Kings County Development Co.*, 177 Cal. 529, 536 [171 P. 102]; *People* v. *Banning Co.*, 167 Cal. 643, 646, 649 [140 P. 587].)

Appellants suggest that the deeds executed by the Board of Tide Land Commissioners may not have been signed

by the duly constituted members of the board. They call attention to two maps admitted in evidence which have on them the names of Messrs. Washington, Gibbons and Bullock as the members of the Board of Tide Land Commissioners. One of these maps bears the date of November 27, 1871 and the other has printed on it the following: "Sale to commence Friday, Dec. 8th 1871 at Platt's Hall."

It is obvious that both of these maps antedate the deeds* executed by the Board of Tide Land Commissioners and there is no evidence that on the dates when said deeds were executed the properly appointed and acting members of the board were not the persons who signed said deeds in such capacity.

The names of the members appearing on the deeds are Johnson, Briggs, and Stratton. The record does not disclose when they replaced Washington, Gibbons and Bullock. However, it is presumed that "a person acting in a public office was regularly appointed to it" and that "official duty has been regularly performed." (Code Civ. Proc. § 1963, subds. 14 and 15.) We do not find any merit in this claim of invalidity of the deeds.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied December 16, 1964.

---

*One of which is dated December 11, 1871, and the others are dated December 29, 1871.