[Civ. No. 3524. Third Appellate District.—May 29, 1928.]

RALPH B. CLAPP et al., Respondents, v. GRANT M. LORRAINE et al., Defendants; ROBERT M. CLAPP et al., Appellants.

James B. Ogg, Zach Lamar Cobb and Earl A. Littlejohns for Appellants.

Walter M. Campbell for Respondents.

FINCH, P. J.—The plaintiffs were given judgment, in accordance with the prayer of their complaint, quieting their title to the real property described in the complaint, subject only to a lien in favor of defendant Cynthia B. Clapp for support and maintenance during the remainder of her life and a mortgage lien in her favor securing the payment to her of the plaintiff's promissory note. Robert M. Clapp and Randall C. Clapp, defendants and cross-complainants, have appealed from the judgment. The plaintiff Ralph B. Clapp, the cross-defendants Archibald W. Clapp and Albert

A. Clapp and the appellants are the sons of Cynthia B. Clapp, who is a widow. The property in suit was purchased in the year 1897 with community funds of Cynthia B. Clapp and her husband, the father of the other parties named, and was conveyed to Mrs. Clapp, in whom the record title thereafter stood until February 23, 1923, at which time she conveyed the same to plaintiff Ralph B. Clapp. The husband died in the year 1911. In their answer the appellants alleged that "Cynthia B. Clapp acquired and held title in said real property in trust for her five sons, . . . under the agreement with their deceased father that the title thereto would vest in said sons, share and share alike, upon her death," and that the conveyance from Cynthia B. Clapp to Ralph B. Clapp "was made with the verbal understanding and agreement between them" that the plaintiff "would hold the title thereto in trust for the benefit of said five sons, share and share alike." In their cross-complaint appellants alleged that the property in suit was the community property of their parents at the time of their father's death, and that they each succeeded to and now own an undivided one-fifteenth thereof and that their mother's said conveyance of February 23, 1923, "was made upon the express understanding that the title to said property was being vested in Ralph B. Clapp, in trust for her support" and for her said five sons, "and that said Ralph B. Clapp would manage and control the same, and distribute the issues and profits thereof to said beneficiaries, and upon a sale of all or any part would distribute the proceeds to the beneficiaries." Appellants also alleged that Cynthia B. Clapp was induced to make the conveyance of February 23, 1923, and they to consent thereto, by certain false representations made by plaintiff Ralph B. Clapp.

In no sense did the appellants represent their mother in the action. She was duly served with summons but failed to answer the complaint and her default was entered. She appeared as a witness for the plaintiffs and testified in their behalf.

The property having been conveyed to her by an instrument in writing, the presumption is that the title was thereby vested in her as her separate property. (Civ. Code, sec. 164.) There is no evidence that she ever held the property in trust for her sons or that it was at any time the

community property of herself and husband, and the court found against appellants on those issues. Unless, therefore, the conveyance of the property by Cynthia B. Clapp to Ralph was intended to create a trust, as alleged by the appellants, they have no interest therein or in the outcome of this action. The deed of conveyance is absolute in form. It is conceded, however, that the deed and two other writings are to be construed together as a single instrument. One of these writings is in the form of identical letters from Ralph to his four brothers. The other is in the form of an agreement, to which is attached a copy of the letters. Omitting dates and immaterial parts, they are as follows:

"In accordance with my letter of February 14, 1923, to my brothers, as per copy attached hereto, regarding the purchase of mother's place by me, I hereby agree to pay $21,000 for the place, under the terms stipulated, and to carry out the proposals in that letter. In the event of my death while mother is still alive, Florence will carry out the provisions of this agreement. In accordance we have signed our names as follows:

"RALPH B. CLAPP.
"FLORENCE H. CLAPP."

"I have a proposition to make which I believe will solve one of our problems. . . . The plan therefore, that I believe will solve the problem is for us (plaintiffs) to build on mother's place and move there and be responsible for her care. We can do this by selling our own place which is now on the market. If we carry this out we should want to buy mother's place outright, pay off the mortgage, fix up her house for her and put the grounds into presentable condition and keep the place as it should be. As to the price, . . . we will be willing to take it at $21,000, . . . providing you will all agree as to terms and conditions. As a first payment, will apply the $1,100 mentioned below which I have advanced. We will agree to build on the place just as soon as possible and to pay off or assume the mortgage, and to fix up mother's house as soon as possible and to make it comfortable for her, and to immediately assume complete responsibility for her care and maintain her on the place as long as she is with us. It is to be understood that we would not pay interest, as such, to mother

but that our care of her would offset this as long as she lives and for a period of 5 years thereafter. At her passing on I would become indebted to her estate for $20,000 for which I would give a note secured by a mortgage on the place or other acceptable security, this note to bear interest in accordance with statement above, and to be for such time as would be mutually agreeable. It would, of course, be understood that we would not sell the place while mother is alive and that she would have a home there for that time or as long as she desired. . . . We have talked this over very fully with mother and she has a copy of this letter to which she agrees and she is anxious to have the plan carried out, but I don't want to go ahead with it unless it meets with the approval of all you."

It is very clear that the foregoing writings do not create or prove a trust in favor of the appellants. It appears therefrom unequivocally that Ralph was "to buy mother's place outright" and to pay "her estate" the unpaid part of the purchase price. Since the mother is still living, the appellants have no interest in "her estate" and may never succeed to any part thereof, because it is within her power to dispose of all her property, by deed or will, to others. The mere "expectancy of an heir apparent is not to be deemed an interest of any kind." (Civ. Code, sec. 700.) Ralph testified that the transaction was "an outright sale of the property" to him. Cynthia B. Clapp, who was of the age of eighty-one years at the time of the trial, testified that she saw the letter referred to before Ralph sent it to her other sons; that she made the deed "according to the terms of that letter"; and that she was "actually conveying the ownership to the property to Ralph" when she made the deed. As might well be expected from one of her age, some of Mrs. Clapp's testimony, given on cross-examination, is somewhat inconsistent with parts of her foregoing statements, but her testimony as a whole tends strongly to show that the transaction with Ralph was what the written evidence thereof indicates. Appellants rely upon the following statement contained in a letter from the mother to Robert, under date of February 17, 1923, as showing her intention in making the conveyance to Ralph: "I am writing to you all regarding a letter that will come to you from Ralph—and which I *fully approve* of—And I

hope you and the other boys will look at it as I do—You will none of you lose a dollar by means of it—The place will—by being put in order and kept so—rise in value—and it is not to go out of the family—only as you all agree later on—and you will share according to my will—just the same —and very much more to your advantage." While some of the statements in the letter, considered alone, may tend to show that the mother intended to retain ownership of the property, there is nothing therein to show that she intended to create a trust in favor of her sons. The statement that Randall "will share according to my will" tends to show that it was not the mother's intention to give him any interest in the property during her lifetime, and her declaration that she fully approved of Ralph's letter, which contained the statement that he desired "to buy mother's place outright," strongly tends to show that she understood the transaction to be what it purports to be on the face of the writings evidencing it. Transactions which have been reduced to writing are not to be lightly overthrown, and in this case the evidence abundantly supports the findings of the court to the effect that the transaction in question was an absolute sale, and that the appellants have no interest in the property or in the moneys due from Ralph to the mother on account of the selling price thereof.

Appellants offered in evidence a letter written by the mother in 1914 and her will executed in 1917. The court sustained the plaintiff's objections thereto. The parts of the letter relied on by appellants are as follows: "Some time ago I wrote a letter to be opened by you after my death in which I tried to make everything plain as to what I wanted done about the property. . . . Ralph has the papers and I leave it for you all to settle among yourselves—Whatever is left after everything is square I wish divided equally among you. . . . I want you each to have the same." The will contains the following: "I give devise and bequeath all of my estate of which I shall die possessed of every kind and character unto my sons (naming all of them) share and share alike." There is nothing in either writing inconsistent with the mother's action in selling the property to Ralph. At the trial she testified that it always had been and then was her desire that all of her sons share

equally in whatever property she might own at the time of her death.

Appellants attempted to prove that Ralph obtained the deed from the mother through fraud and misrepresentation and that the agreed price of the property was more than that stated by him. However important these issues would have been if tendered by the mother, they were wholly immaterial as between Ralph and the appellants, they not having shown that they had any interest in the subject matter of the suit. It is immaterial in this action whether appellants were induced by fraud or misrepresentations to consent to the sale of the property by the mother to Ralph, because their consent to the sale was unnecessary to its consummation and added nothing to its validity. Objection is made to some of the findings. The findings are sufficient, and fully supported by the evidence, to the effect that the appellants have no interest in the property involved in the suit. Having no interest therein, they are not in a position to attack the other findings.

The judgment is affirmed.

Bartlett, J., *pro tem.*, and Plummer, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 26, 1928.

All the Justices present concurred.