[Civ. No. 12497. Second Appellate District, Division Two.—May 8, 1940.]

THE CITY OF NEWPORT BEACH (a Municipal Corporation) et al., Respondents, v. ROBERT FAGER et al., Appellants. THE CITY OF NEWPORT BEACH (a Municipal Corporation) et al., Respondents, v. ALICE SIMMONS et al., Appellants. THE CITY OF NEW-PORT BEACH (a Municipal Corporation) et al., Respondents, v. LETA PAULINE CHAPMAN et al., Appellants. THE CITY OF NEWPORT BEACH (a Municipal Corporation) et al., Respondents, v. MARY GRACE RENDLEMAN et al., Appellants.

24

Owen E. Kupfer, Loren A. Butts and H. B. Cornell for Appellants.

Roland Thompson and Rutan, Mize & Kroese for Respondents.

WOOD, J.—Actions were commenced by the City of Newport Beach and Newport Harbor Post No. 291 of the American Legion to quiet title to certain parcels of land abutting upon the shore of Newport Bay. A peninsula extending in an easterly direction from the mainland separates Newport Bay from the Pacific Ocean and the land in question is part of this peninsula, facing northerly toward the bay. The ac-

tions were consolidated for trial and a judgment was entered in favor of the plaintiffs, from which defendants have prosecuted this appeal.

The defendants are the present and former owners of lots in a subdivision known as block 109, section B, Newport Bay. The official subdivision map shows that in 1905 the lots were bounded on the north by an alley. This alley was never actually improved but was officially abandoned in 1908. The land in controversy consists principally of reclaimed tide land which was filled as a result of certain dredging operations carried on by the city between 1918 and 1923. In 1917 the United States War Department established a bulkhead line in the bay which was located parallel to and about 260 feet northerly of the center line of the alley. The material from the dredging operations was deposited in the area between such bulkhead line and the northerly boundary of block 109. After the land was filled, the City of Newport Beach constructed a street designated as Bay Avenue, which is 50 feet in width, parallel to and 100 feet northerly of the center line of the alley shown on the subdivision map. Ninth and Tenth Streets, which constitute the easterly and westerly boundaries of block 109, were likewise extended through such filled area to the bulkhead line.

Each defendant claims title to, or at least the right of access to navigable water over, a strip of land between the northerly boundary of his lot and the bulkhead line, bounded easterly and westerly by the northerly prolongations of the lot lines. Defendants' claims are based upon asserted rights as littoral owners of the upland. The city claims title to the land in question by virtue of certain legislative grants as well as by private deed of the portion of the upland found by the court to have existed between the northerly boundaries of the lots in block 109 and the line of mean high tide. The several legislative grants upon which the city bases its claim of title are as follows: In 1919 the state granted to the city all tide land and submerged land within the city bordering upon or in front of the upland then owned by the city. (Stats. 1919, chap. 494, p. 1011.) In 1927 the state granted to the city all tide land and submerged land bordering upon, in and under Newport Bay and situated below the line of mean high tide, which had not been previously granted to the city. (Stats. 1927, chap. 70, p. 125.) In 1929 the state

granted to the city all tide lands, submerged lands and filled lands within the corporate limits of the city, situated below the line of mean high tide, which had not been previously granted to the city. (Stats. 1929, chap. 813, p. 1704.) The American Legion claims title as the grantee of the City of Newport Beach to that portion of the land in question lying between the northerly boundary of the alley and the southerly boundary of Bay Avenue in front of the lots owned by defendants.

The defendants contend that when the area in question was in a state of nature the northerly boundary of their lots was the line of the mean high tide of the Pacific Ocean in Newport Bay and that such line was to the south of the alley above referred to. The trial court found that at all times there was upland between the northerly boundary of defendants' lots and the line of the mean high tide. Defendants now contend that these findings of the trial court are not supported by the evidence, but we find it unnecessary to pass upon this contention, for if such findings were held to be unsupported by the evidence defendants' claims would nevertheless be defeated under settled principles of law relative to the rights of littoral owners.

The decision in *Koyer* v. *Miner,* 172 Cal. 448 [156 Pac. 1023], is determinative of the present appeal so far as the asserted littoral rights of the defendants are concerned. In that case plaintiff, who owned land bounded by the line of ordinary high tide in San Pedro Bay, sought to quiet title to certain reclaimed tide land in front of his property and to restrain defendants from maintaining structures on such filled land which prevented his free access to the navigable waters of the bay. The tide lands bordering on plaintiff's property had been granted by the state to the city of San Pedro and had been reclaimed under an agreement between the city and defendant Miner. Miner agreed to erect a seawall on the harbor front line established by the federal government and to fill the land between such seawall and plaintiff's land, dedicating certain portions thereof for use as public streets; the remainder of such filled land was to be held by Miner in fee, or if the grant of the fee was invalid, then under lease for a term of fifty years. The other defendants claimed rights in the filled land as successors in interest of Miner. In concluding that plaintiff as a littoral owner had no right of

access to the waters of the bay over such filled land, the court relied upon the case of *Henry Dalton etc. Co.* v. *Oakland,* 168 Cal. 463 [143 Pac. 721], and quoted the following language therefrom: " . . . when the public authorities see fit to make improvements on the land below high water mark for purposes of navigation the riparian owner must yield thereto . . . the littoral rights of the defendants cannot impinge upon the control by the state of tidelands for the public purposes of navigation and fishery, or affect the public easement for those purposes. . . . If such improvements have the effect of cutting off access over said tide-lands from the upland of the plaintiff, it is no ground of complaint because, as has been pointed out, it had no right as an upland owner to the free and unobstructed access to navigable waters over said tide-lands as against the right of the state to at any time devote them to the improvements of the harbor of Oakland in aid of the public easement of navigation and commerce." It was further held that the only littoral right which plaintiff had by virtue of his ownership of the upland was the right of access to the waters of the bay and that since this sole incident of littoral ownership had been rightfully terminated by the harbor front improvement plaintiff had no right to question the use to which the state was devoting such tide lands.

We are satisfied that the correct rule is that the littoral owner of uplands upon a navigable bay has no right of access to the waters of the bay over intervening tide lands, whether filled or unfilled, which have been granted by the state to a city in trust for the purpose of improving such navigable bay in furtherance of commerce and navigation. (*City of Oakland* v. *Buteau,* 219 Cal. 745 [29 Pac. (2d) 177]; *People* v. *Southern Pac. R. Co.,* 169 Cal. 537 [147 Pac. 274].) Although it is true that as against a stranger a littoral owner of upland bordering upon navigable waters may not be deprived of his right of access to such waters, no such right exists in favor of such littoral owner as against the state or its grantee in the exercise of a lawful use or purpose. (*Boone* v. *Kingsbury,* 206 Cal. 148 [273 Pac. 797]; *San Francisco Sav. Union* v. *R. G. R. Petroleum Co.,* 144 Cal. 134 [77 Pac. 823, 103 Am. St. Rep. 72, 1 Ann. Cas. 182, 66 L. R. A. 242].)

It is apparent that if the court had found defendants to be littoral owners the result would have been the same.

No rights in the filled land involved in this action could have been asserted by the defendants as against the City of Newport Beach. In dredging the bay and filling the tide lands in question the city was carrying out a plan for the general development of the bay as a harbor and at the same time was improving the harbor front. The street construction on such land facilitated easy access to the waters of the bay by the general public and all of the improvements were in furtherance of the purposes for which the city held the land in trust.

██ It is contended by defendants that the court erred in finding that the land in question had been freed from the tide land trust under which it was held by the city. The record discloses that in 1935 the legislature adopted an act authorizing the bringing of a suit against the state to quiet title to the land involved in this action. (Stats. 1935, chap. 448.) An action was thereafter commenced by the present plaintiffs against the state to quiet title to the land in accordance with their respective interests therein. A judgment was entered adjudging each plaintiff to be the owner of the portion of the land claimed by it free and clear of any public trust. ██ It is within the power of the legislature to free reclaimed tide land from the public trust when such land is no longer required for navigation, commerce or fisheries and when to do so will not substantially impair the public interest in the lands and waters remaining. (*Atwood* v. *Hammond*, 4 Cal. (2d) 31 [48 Pac. (2d) 20] ; *Knudson* v. *Kearney*, 171 Cal. 250 [152 Pac. 541].) There is no showing that the land in question is required for navigation, commerce or fisheries, nor is there any evidence that the public interest in the remaining land and waters has been impaired in any way. The legislative act authorizing suit to quiet title is susceptible of but one construction, i. e., that it was the intent of the legislature to free the land involved from the public trust under which it had theretofore been held for, by virtue of the prior grants to the city, the state had divested itself of all interest in such land excepting its interest as the sovereign in protecting the public trust.

██ Defendants further contend that the city never acquired title to the land in controversy. This argument is based upon the fact that the first legislative grant to the city covered only tide land and submerged land bordering upon or in front of upland then owned by the city, defend-

ants asserting that at that time the city owned no upland in front of block 109. In the interval between the first grant and the subsequent grants the land in dispute was artificially filled to a point above the line of mean high tide so that when the later grants of tide lands, submerged lands and filled lands "below the line of mean high tide" were made, defendants argue that no title to the filled land above the line of mean high tide was conveyed. Our answer to this contention is found in the case of *Miller* v. *Stockburger,* 12 Cal. (2d) 440 [85 Pac. (2d) 132]. In that case, the same contention was made with respect to a similar legislative grant conveying to the city of Long Beach "all tidelands and submerged lands, whether filled or unfilled, . . . and situated below the mean high tide . . . ". In disposing of such contention the court states at page 444: "It would seem clear that the only lands which the legislature could possibly have had in mind (i. e., in using the words 'filled or unfilled') which were not included in the description 'Tidelands and submerged lands . . . situated below the line of mean high tide' would be lands which formerly had been situated below said mean high tide line, but which at the time of the grant, had been filled in such manner as not to lose their character as tidelands or submerged lands." When in 1929 the legislature granted to the City of Newport Beach all tide lands, submerged lands and *filled lands* situated below the line of mean high tide such grant included so much of the filled land in question as had been formerly below the line of mean high tide. The fact that tide land is artificially raised above the line of mean high tide does not operate to divest the state of its title thereto nor does it change the character of such tide land. (*Patton* v. *City of Los Angeles,* 169 Cal. 521 [147 Pac. 141].) In the Patton case it was held that a legislative grant of all the tide and submerged lands within the city boundaries included tide land which had been artificially filled prior to the time when the grant was made.

The legislature in 1931 fixed the line of mean high tide in front of lots 11 to 18, inclusive, in block 109 as being coincident with the bulkhead line. Contrary to the contention of defendants, this act cannot be construed as an abandonment of the portion of the filled land which is situated between the bulkhead line and the center line of the alley. The title to the filled land having vested in the city prior to

1931, the subsequent fixing of the line of mean high tide could not detract from the earlier grants of title.

Defendants assert that the effect of the judgment was to deprive them of their property rights without due process and without compensation, contrary to constitutional guaranties. It must be borne in mind, however, that the littoral rights of an upland owner who does not own title to the submerged land or tide land in front of his property are, under the law in this state, subject to being terminated at will by any disposition which the state may choose to make of such submerged lands or tide lands. (*Koyer* v. *Miner, supra; City of Oakland* v. *Buteau, supra.*) Defendants as littoral owners are being deprived of no property right since their right of access over the intervening tide lands to navigable water was a qualified right at all times subordinate to the paramount right of the state in which title to such tide lands was vested. No right of action exists in favor of a littoral owner whose right of access over the tide lands to navigable waters has been cut off by the disposition which the state has made of such tide lands. (*Koyer* v. *Miner, supra.*)

All of the evidence relating to the character of the major portion of the land in question shows that it is artificially filled tide land. There is therefore no merit in the argument of defendants that such land is to be treated as an accretion to which they, as the respective upland owners, are entitled. In order for a littoral owner to be entitled to accretions which may form upon the upland, such accretions must have been the result of natural causes and must have been formed gradually and imperceptibly. (*City of Los Angeles* v. *Anderson,* 206 Cal. 662 [275 Pac. 789].) Accretions which have been added to the upland by artificial means do not inure to the benefit of the littoral owner but remain in the state or its successor in interest. (*Dana* v. *Jackson Street Wharf Co.,* 31 Cal. 118 [89 Am. Dec. 164] ; *Patton* v. *City of Los Angeles, supra.*)

The suggestion of defendants that the city was without power to convey title to the portion of the land claimed by the American Legion because of the asserted prohibition against such conveyance which is found in section 862.2 of the Municipal Corporations Act (Deering, Gen. Laws, Act 5233) does not merit extended discussion. In no event could defendants have been prejudiced for, if the American Legion

does not own the land under a valid deed from the city then such land is owned by the city. In either instance the land would be owned to the exclusion of any asserted claim of defendants, who are not on this appeal in position to attack the findings settling the title to the land as between the two plaintiffs. (*Fouch* v. *Johnston,* 199 Cal. 437 [249 Pac. 852]; *Clapp* v. *Lorraine,* 92 Cal. App. 270 [267 Pac. 911].)

The judgment is affirmed.

Moore, P. J., concurred.

McComb, J., deeming himself disqualified, did not participate in the decision.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 1, 1940. Curtis, J., and Edmonds, J., voted for a hearing.