Filed 9/1/20  Riddle v. Vallely CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SUSAN [BIDART] RIDDLE, as Trustee, etc.,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>JOHN VALLELY et al.,<br><br>    Defendants and Respondents. | G057397<br><br>(Super. Ct. No. 30-2015-00808124)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Layne H. Melzer, Judge.  Affirmed.

Claremont Land Group, Geralyn L. Skapik, Mark C. Allen III and Blair J. Berkley for Plaintiff and Appellant.

Law Office of Harry S. Carmack and Harry S. Carmack for Defendants and Respondents.

*        *        *

This is a dispute between neighboring property owners on Balboa Island in the City of Newport Beach (the City). The City leased the tidelands in front of the properties to one of the property owners, who operates a commercial pier that extends in front of both properties. The other property owner asserts the City improperly issued the lease and complains the pier "encroaches" in front of her property, foreclosing her access to the harbor. She brought a complaint and petition for writ of mandate against her neighbor and the City, asserting claims for inverse condemnation, declaratory relief, and violations of due process, the Ralph M. Brown Act (Brown Act) (Gov. Code, § 54950 et seq.), the City Charter, and City Council Resolution No. 2012-97 regarding commercial tidelands leases. The trial court granted the City's motion for summary adjudication (MSA) on her inverse condemnation claim, and following a bench trial, it entered judgment for defendants on the remaining claims. For the reasons discussed below, we affirm.

**FACTS**

Plaintiff Susan [Bidart] Riddle, as trustee of the Leonard A. Bidart Family Trust under Trust Agreement Dated August 15, 2001, has owned the real property located at 510 and 510½ South Bay Front on Balboa Island in the City of Newport Beach since 1993. Defendant John Vallely and his wife, Karen Vallely, as co-trustees of the John Stephen Vallely Trust, own the neighboring real property located at 508 South Bay Front. The Vallely family has owned and lived in that property for over 80 years.

Both properties overlook the water, but they are separated from Newport Bay by an eight-foot-wide City-owned public walkway. The City holds title to the tidelands in Newport Bay in trust from the State of California.

Vallely and his wife operate a commercial business, Vallely Boat Rentals (a sole proprietorship), in those tidelands. The pier, dock, and floats have existed in their current configuration since the late 1930s, when Vallely's father added the dock and

2

floats under permits issued by the City and the Army Corps of Engineers. Vallely has managed his family's business since 1976.

Although the Vallely pier was already there when Riddle purchased her property in 1993, Riddle now objects to the pier's existence because it "encroaches" in front of her property, blocks her access to the harbor, and prevents her from applying for a permit to build her own pier.

After Vallely's mother died in 2012, Vallely applied to have the permit for the pier, which the City had issued to his parents' family trust, transferred to his own family trust. The City denied his transfer application because at the time, the Newport Beach Municipal Code (NBMC[1]) required a new pier permit application under the circumstances. (See NBMC § 17.35.020(F) ["In areas where existing piers and floats encroach in front of abutting upland property owned by others, a new permit approved by the Harbor Commission shall be required upon: [¶] . . . [¶] (3) Any change of existing ownership of the abutting upland property owned by the permittee or upon the death of the permittee . . ."].)

Vallely filed a petition for writ of mandate to require the City to transfer his parents' permit to him. The trial court denied his petition, noting the relevant provisions of the NBMC were "confusing" and "riddled with uncertainty." Vallely appealed.

While his appeal was pending, in December 2013, the City adopted Ordinance No. 2013-27, which amended NBMC Chapter 17.60 and subsection 17.35.030(B)(2) regarding leases and permits for piers in the tidelands. Among other things, the ordinance amended NBMC section 17.60.060(E) to "allow a person to apply for a commercial pier permit *or lease* in front of or encroaching upon

---

[1] The NBMC has undergone various revisions in recent years. This opinion utilizes the 2015 version, which was introduced as an exhibit at trial and which controlled during the events in question.

3

abutting upland property not owned or leased by the person applying for the permit." (Italics added.) The amended code section also exempted commercial pier leases and permits "from any provision requiring involvement of the owner or long-term lessee of an abutting upland property."

After these legislative changes took effect, Vallely learned he could operate his commercial pier business under a tidelands lease and thus did not need to pursue a permit transfer via his pending appeal. Vallely's litigation counsel and the assistant city attorney negotiated a lease in which Vallely Boat Rentals leased the tidelands in front of the Vallely and Riddle properties from the City for a 50-year period. Subject to revisions which we discuss below, the lease resembled the model commercial tidelands lease template that the City Council had approved and adopted in late 2012 in Resolution No. 2012-97. The City Manager signed the Vallely lease on behalf of the City, and Vallely signed on behalf of Vallely Boat Rentals. The lease was issued without a public hearing or any formal notice to Riddle.

One day after the lease's effective date, Vallely dismissed his appeal in the permit transfer litigation. The City Manager and the assistant city attorney concede the lease was designed to resolve the litigation and moot Vallely's appeal. There is no evidence the City Council approved any sort of formal settlement with Vallely.

Riddle takes issue with both the Vallely lease and the way it was issued. She contends the lease damages her littoral rights in the tidelands, including her right to access the harbor and her right to build her own pier. She contends the City Manager lacked the authority to issue the Vallely lease, and she asserts the lease does not comply with local law regarding commercial tidelands leases. Riddle further complains the City Council secretly settled Vallely's pier permit transfer litigation by issuing the lease, without giving her notice of the lease or an opportunity to be heard, and without following the requirements of the Brown Act.

4

Riddle sued the City and Vallely (collectively, Defendants) to invalidate the lease. In her operative Third Amended Verified Petition for Writ of Mandate and Complaint, Riddle asserted five claims: (1) declaratory relief that the lease is invalid; (2) petition for a writ of mandate invalidating the lease as a violation of the City Charter and Resolution No. 2012-97 concerning commercial tidelands leases; (3) petition for a writ of mandate invalidating the lease as a violation of Riddle's due process rights; (4) violation of the Brown Act (against the City only); and (5) inverse condemnation (against the City only).

The City filed an MSA on Riddle's inverse condemnation claim, asserting Riddle has no property right in the leased tidelands and thus cannot show a taking occurred. The trial court agreed and granted summary adjudication for the City.[2]

Trial then commenced on the remaining four causes of action. After trial, the trial court issued a detailed 14-page statement of decision ruling in Defendants' favor, and it entered judgment for Defendants on all five causes of action. Riddle appealed.

## DISCUSSION

1. *Inverse Condemnation*

Riddle first contends the trial court erred in granting summary adjudication for the City on her inverse condemnation claim. According to Riddle, a triable issue of fact exists as to whether the Vallely lease harmed her littoral property rights. We review the grant of summary adjudication de novo, applying the same standards we apply in reviewing an order granting a motion for summary judgment, and considering all the evidence set forth in the moving and opposition papers, except that to which objections have been made and sustained. (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1471-1472.)

---

[2] The City also sought summary adjudication on Riddle's fourth cause of action, but the trial court denied that portion of its motion.

5

To bring a successful inverse condemnation claim, a plaintiff "must prove that a public entity has taken or damaged [her] property for a public use." (*Pacific Bell v. City of San Diego* (2000) 81 Cal.App.4th 596, 602.) That is, she "'must show there was an invasion or appropriation (a "taking" or "damaging") of some valuable property right which the property owner possesses by a public entity and the invasion or appropriation directly and specially affected the property owner to [her] injury.'" (*City of Los Angeles v. Superior Court* (2011) 194 Cal.App.4th 210, 221.)

Riddle contends the City damaged her property rights by allowing the pier on Vallely's leased premises to "encroach" in front of her property and foreclose her access to the harbor. The City holds title to the tidelands where the offending pier and floats are located, but Riddle insists she owns the "full complement of littoral property rights" in those tidelands, including the right to build a pier out to the line of navigability and the right of access from every part of her frontage across the foreshore. According to Riddle, these rights were harmed by the issuance of the Vallely lease. We cannot agree.

Littoral rights are water rights enjoyed by landowners whose property "border[s]," is "adjacent to," or "abut[s]" a natural lake, pond, sea, or ocean. (See *State of Cal. ex rel. State Lands Com. v. Superior Court* (1995) 11 Cal.4th 50, 63, fn.1; *Kendall v. Walker* (2009) 181 Cal.App.4th 584, 593; *Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 146-147; see also *L.A. Athletic Club v. Santa Monica* (1944) 63 Cal.App.2d 795, 799 [properties that "no longer bordered upon the sea" were not littoral properties].) "A littoral owner has been held to have the right to build a pier out to the line of navigability; a right to accretion; [fn. omitted] a right to navigation (the latter right being held in common with the general public) [citation]; and a right of access from every part of his frontage across the foreshore [citation]." (*Marks v. Whitney* (1971) 6 Cal.3d 251, 263 (*Marks*).)

Riddle's property neither borders nor abuts the tidelands. As Riddle conceded in her declaration and separate statement opposing the City's MSA, and during

6

oral argument, there is an eight-foot-wide City-owned public walkway that runs between her property and Newport Bay. Riddle's property therefore carries no ordinary littoral rights in the tidelands.

Riddle insists, however, that the NBMC affords her the "equivalent" of littoral property rights, including *the right* to construct a residential noncommercial pier. We again disagree. According to the NBMC, the owner of an abutting upland residential property—which by definition includes properties on Balboa Island that are separated from the harbor by a City-owned public walkway, like Riddle's—may obtain a residential pier permit if the Harbor Commission determines it is in the public interest. (See NBMC §§ 17.01.030(A), 17.35.020(A)(1), 17.35.020(A)(8), 17.35.060, 17.60.030.) Therefore, Riddle, as the owner of an abutting uplands property, has the right only *to apply* for a pier permit.[3]

In any event, we need not resolve the question of Riddle's littoral rights because even if she did have such rights, those rights are subservient to the City's exercise of its powers to create and regulate the public harbor. The state, which holds all navigable waterways in trust for the benefit of the people of California, granted the City title in trust to the tidelands in Newport Bay in 1919. In 1978, through legislation known as the Beacon Bay Bill, the state renewed its grant to the City of all right, title, and interest in the tidelands and submerged lands, whether filled or unfilled, bordering upon or under the Pacific Ocean or Newport Bay that were within the City's corporate limits as of July 25, 1919, for the purpose of establishing, improving, and conducting a public harbor, and for constructing wharves, docks, piers, slips, quays, ways, and streets, among other uses. The Beacon Bay Bill further specifies the City may lease portions of the tidelands for up to 50 years for any purpose consistent with the trust. (See Stats. 1997,

---

3    Riddle has never applied for residential pier permit, nor has the Harbor Commission ever determined whether such a pier would be in the public interest.

7

ch. 317, §§ 1-2, pp. 2248-2254; Stats. 1978, ch.74, §§ 1-16, pp. 198-207; cf. Civ. Code, § 718 [tidelands granted to any city by the state may be leased for a period not to exceed 66 years unless the grant from the state specifies the term for which said lands may be leased].)

The fact that the City holds title to the tidelands severely limits whatever littoral rights Riddle may claim. Although a "littoral owner has a right in the foreshore adjacent to [her] property separate and distinct from that of the general public," that right is "burdened with a servitude in favor of the state [or its grantee] in the exercise of its trust powers over navigable waters." (*Marks, supra*, 6 Cal.3d at pp. 262-263; see *Colberg, Inc. v. State of California ex rel. Dept. of Pub. Wks.* (1967) 67 Cal.2d 408, 422 [littoral property owner's "right to have access to those navigable waters . . . is burdened with a servitude in favor of the state which comes into operation when the state properly exercises its power to control, regulate, and utilize such waters"].)

As a result, "the littoral rights of an upland owner who does not own title to the submerged land or tide land in front of his property are, under the law in this state, *subject to being terminated at will* by any disposition which the state may choose to make of such submerged lands or tide lands." (*City of Newport Beach v. Fager* (1940) 39 Cal.App.2d 23, 31 (*Fager*), italics added.) Thus, such an owner cannot maintain a claim against the state or its grantee for "depriv[ing her] of [her] property rights without due process and without compensation." (*Ibid*.) A littoral owner is "deprived of no property right since [her] right of access over the intervening tide lands to navigable water was a qualified right at all times subordinate to the paramount right of the state in which title to such tide lands was vested. No right of action exists in favor of a littoral owner whose right of access over the tide lands to navigable waters has been cut off by the disposition which the state has made of such tide lands." (*Ibid*.) "Although it is true that *as against a stranger* a littoral owner of upland bordering upon navigable waters may not be deprived of his right of access to such waters, no such right exists in favor of such

littoral owner *as against the state or its grantee* in the exercise of a lawful use or purpose." (*Id.* at p. 28, italics added.)[4]

Under these authorities, even if Riddle has littoral rights to access or build a pier in the tidelands (an issue we need not decide), those rights are subservient to the City's powers to manage the tidelands in trust. The City's issuance of the Vallely lease was a valid exercise of those powers. As noted, under the Beacon Bay Bill, the City holds title to the tidelands in trust for the purpose of establishing and conducting a public harbor and for constructing docks and piers, among other purposes. The Beacon Bay Bill also expressly allows the City to lease the tidelands for terms not exceeding 50 years for purposes consistent with the trust. The Vallely lease is consistent with the trust's purposes, and it is for a term that does not exceed 50 years; thus it is a valid exercise of the City's powers. Consequently, any littoral rights Riddle may have in the tidelands were terminated by the City's issuance of the Vallely lease. (See *Fager*, *supra,* 39 Cal.App.2d at p. 31 [littoral rights are "subject to being terminated at will by any disposition which the state may choose"].)

For these reasons, Riddle cannot show the issuance of the lease amounted to a taking of a valuable property right. The trial court therefore properly granted summary adjudication for the City on Riddle's inverse condemnation claim.

2.      *Writ of Mandate Invalidating the Lease*

We next consider the trial court's denial of Riddle's petition for a writ of mandate invalidating the Vallely lease as a violation of the City Charter and Resolution No. 2012-97. In this cause of action, Riddle asserted the City Council never authorized the City Manager to issue the Vallely lease, and the City Manager exceeded the scope of

---

[4]      Riddle attempts to distinguish *Fager* on the grounds that it was a sea-wall case in which the city was required to completely extinguish littoral property rights to make harbor improvements for the public benefit. This seems to us a distinction without a difference.

9

his authority in doing so. The trial court rejected these contentions and entered judgment for Defendants.

In a mandamus proceeding, the trial court "must determine whether the agency's action was arbitrary, capricious, or without evidentiary support, and/or whether it failed to conform to the law. The trial court may not substitute its judgment for that of the agency or force the agency to exercise its discretion in a certain way." (*Association of Irritated Residents v. San Joaquin Valley Unified Air Pollution Control Dist*. (2008) 168 Cal.App.4th 535, 542.) "'In reviewing a judgment on a petition for writ of mandate, "[w]e review the trial court's findings of fact for substantial evidence, and review its legal conclusions, including its interpretation of statutory provisions, under a de novo standard of review."'" (*Small Property Owners of San Francisco Institute v. City and County of San Francisco* (2018) 22 Cal.App.5th 77, 84.) Applying those standards here, we find no error in the trial court's denial of Riddle's writ petition.

To start, the City Manager had the authority to issue a commercial tidelands lease to Vallely. The City Charter permits the City Council to designate a city employee to enter into written contracts on its behalf.[5] Consistent with that provision, in late 2012, the City Council adopted Resolution No. 2012-97, in which it approved and adopted a model lease template and a model permit template for commercial tidelands uses. In section 5 of the resolution, the City Council expressly "authorize[d] the City Manager or his/her designee to enter into the attached lease/permit, in a form that is substantially similar to the attached" templates. Attachment 1 to the resolution is a 38-page model lease agreement, and attachment 2 is a 6-page model commercial tidelands permit. As these provisions make clear, the City Council delegated to the City Manager the power to

---

[5]     Section 421 of the City Charter requires all contracts binding the City to "be made in writing, *approved by* the City Council or *[an] employee designated by the City Council* and *signed on behalf of the City* by the Mayor or *by such other employee as shall be designated by the City Council*." (Italics added.)

10

enter into commercial pier leases so long as they are "substantially similar" to the approved lease template.

Riddle contends the Vallely lease is not "substantially similar" to the model lease template adopted in Resolution No. 2012-97, and the City Manager therefore exceeded his authority in issuing the lease. The trial court rejected this argument: "The lease template contains approximately 166 individual provisions. In connection with their negotiations, the City and Vallely made approximately 15 modifications (largely eliminating certain language deemed unnecessary) while adding just a single provision. None of these modifications have anything to do with the Riddle Property; they do not countermand existing provisions of the Harbor Code; nor do they undermine the City's fundamental police power to protect the public health, safety and welfare which remains safeguarded in the approved lease and the existing legislative structure for commercial uses in the Newport harbor. [¶] . . . [¶] While the actual lease varies from the template such variations are to be expected—the template must be adapted to accommodate a wide variety of commercial uses in Newport Harbor—shipyards, fuel docks, cruise docks, restaurant docks, marinas, etc. . . . In this context, the lease is 'substantially similar' to the template."

Substantial evidence—most notably, the redlined comparison of the model lease template to the Vallely lease—supports the trial court's findings. We find no major revisions, additions, or deletions that render the Vallely lease not "substantially similar" to the model lease in violation of Resolution No. 2012-97. The phrase "substantially

11

similar" does *not* mean "identical." Indeed, in some contexts, the phrase can contemplate notable *dissimilarities*.[6]

According to Riddle, the "[m]ost concerning" revision was the deletion of paragraph 20 from the template concerning "surrender" of the pier premises at the end of the lease term. Riddle contends the deletion of this language will allow Vallely to remain in possession of the City's tidelands indefinitely. This argument misconstrues the Vallely lease language, which unambiguously states the lease term will be 50 years commencing on March 12, 2015 and terminating on March 11, 2065, unless sooner terminated.

Riddle further contends the deletion of recitals D and E from the model lease agreement shows the Vallely lease was not substantially similar to the model lease. We are not persuaded. Recitals D and E state the lease was entered into pursuant to a resolution and the City previously issued a pier permit to the lessee. Neither is of particular significance here.

Riddle insists the City Council, in approving the template, deemed every provision in the model lease necessary. Thus, she contends, the City Attorney could not negotiate away provisions without consulting the City Council, and the City Manager could not execute the lease without the City Council's approval. Again, we disagree. In section 5 of the resolution, the City Council expressly authorized the City Manager to enter into leases that are "substantially similar" to the template. Nowhere does the

---

[6] For example, in the copyright context, a plaintiff may establish that the defendant copied her work by showing the defendant had access to the copyrighted work and the two works are "substantially similar"—that is, that the two works share an objective similarity of ideas and expression, and an ordinary, reasonable person would find their total concept and feel to be substantially similar. (*Williams v. Gaye* (9th Cir. 2018) 895 F.3d 1106, 1119 [upholding decision that Pharrell Williams and Robin Thicke's song "Blurred Lines" infringed copyright in Marvin Gaye's song "Got To Give It Up"].)

resolution require the City Manager or his designee to seek the City Council's approval of the modified lease, as Riddle suggests.

Riddle insists the lease could not have been entered into pursuant to Resolution No. 2012-97 because the resolution only allows the conversion of existing permits to leases, and because Vallely Boat Rentals did not have an existing pier permit in place when the lease was issued in March 2015.[7] Not so. Section 2 of the resolution does state the model lease template "satisfies the requirement of NBMC Section 17.60.060(A) covering the *conversion of existing permits to leases*" (italics added), but the resolution does not *require* a permit to be in place for a lease to issue. In fact, recital E in the model lease specifically contemplates that a prior permit will have expired before the lease's effective date: "The City previously issued City Pier Permit Number ____ ('Permit') for the Premises; City Pier Permit Number ___, which shall expire February 28, 2013 after which time the City has stated such Permit will not be renewed and Lessee or any other party has no continuing rights in such Permit after such date." Further, NBMC section 17.60.060(A) expressly allows commercial tideland users to pursue either a lease *or* a permit: "In the event public trust lands are used by an entity other than the City, then that entity shall enter into a lease or permit with the City." Thus, neither Vallely nor his sole proprietorship needed to have a permit in place for the lease to issue.

We conclude Riddle did not establish the City Manager's issuance of the lease was arbitrary, capricious, without evidentiary support, or in violation of the law. The trial court properly denied Riddle's petition for writ of mandate.

---

[7] The City issued permits to Vallely Marina, not Vallely Boat Rentals, for the period of March 1, 2013 to February 28, 2015. The Vallely lease took effect on March 12, 2015, about two weeks after the second permit expired.

13

3.     *Declaratory Relief Invalidating the Lease*

We next consider Riddle's declaratory relief cause of action, in which she sought a declaration that the Vallely lease is void and invalid.[8]  The trial court denied Riddle any relief, reasoning that "declaratory relief is not an available vehicle for challenging the [administrative] decision of the City Manager to approve the Vallely lease."  The correctness of this ruling presents a question of law, which we review de novo.

"It is settled that an action for declaratory relief is not appropriate to review an administrative decision."  (*State of California v. Superior Court* (1974) 12 Cal.3d 237, 249.)  "A declaratory relief action is an appropriate method for obtaining a declaration that a statute or regulation is facially unconstitutional," but administrative mandamus is "'the proper and sole remedy'" where a local agency's administrative decision is at issue. (*Tejon Real Estate, LLC v. City of Los Angeles* (2014) 223 Cal.App.4th 149, 154-155 [collecting cases].)

The City Manager's approval and execution of the lease and the City's issuance of the lease were both administrative decisions involving the lease procedures outlined in the NBMC and Resolution No. 2012-97.  Accordingly, Riddle cannot challenge the validity of the lease by way of a claim for declaratory relief.  The trial court thus properly entered judgment for Defendants on this cause of action.

4.     *Due Process*

Riddle's third cause of action claims she suffered a violation of her due process rights.  In her operative complaint, Riddle alleged she has vested littoral property

---

[8]     Defendants assert Riddle abandoned any challenge to the trial court's ruling on her declaratory relief cause of action because her opening brief fails to address the court's ruling.  While this is true, her brief does present various arguments why the Vallely lease should be "declared void."  We therefore exercise our discretion to consider this cause of action.

14

rights to access the water adjacent to her property, and the City's issuance of the Vallely lease deprived her of her right to seek a permit for a residential dock without notice or an opportunity to be heard. After reviewing her due process claim de novo (*In re Jonathan V.* (2018) 19 Cal.App.5th 236, 241), we conclude no notice of the lease was required, and we find no due process violation.

We begin by observing the statewide legislative protocol regarding city leases did not require the City to give Riddle notice of the Vallely lease. California law allows cities to lease property they own or control for up to 55 years without providing notice or opportunity to be heard. (Govt. Code, § 37380, subd. (a).) Although this same section imposes notice and public hearing requirements on leases longer than that period (*id.*, subd. (b)(3)), those requirements do not apply to charter cities, such as Newport Beach. (*Id.*, subd. (b); see also Civ. Code, § 719, subds. (c), (e), (f) [public hearing requirements for leases of city property do not apply to charter cities, nor to general law cities' leases of tidelands].)

Nor did local law require the City to give Riddle notice of the lease. The NBMC section on commercial leases of tidelands that encroach upon an abutting upland property expressly dispenses with any notice obligation, stating that "[c]ommercial uses . . . are exempt from any provision requiring involvement of the owner . . . of an abutting upland property." (NBMC § 17.60.060(E).)

Riddle relies on NBMC section 17.35.020(F), which requires notice be given to an abutting upland property owner before the City issues a new *permit* for a pier that will encroach in front of that person's property: "In areas where existing piers and floats encroach in front of abutting upland property owned by others, a new permit approved by the Harbor Commission shall be required upon: [¶] . . . [¶] 3. Any change of existing ownership of the abutting upland property owned by the permittee or upon the death of the permittee; [¶] . . . [¶] Before the Harbor Commission acts on the new permit, *the owner of the abutting upland property, in front of which the harbor facility*

15

*encroaches, shall be notified in writing of the meeting in which the new permit will be considered.*" (Italics added.) This code section is inapplicable here, however, because it applies to pier permits, not leases. Unlike permits for encroaching piers, commercial leases for encroaching piers are exempt from notice requirements. (See NBMC § 17.60.060(E).)

Riddle insists NBMC section 17.35.020(F)'s notice requirements apply to both permits *and* leases. In support, she relies on the recitals to Ordinance No. 2013-27, which amended section 17.60.060(E) and other NBMC sections on leases and permits for tideland piers. According to these recitals, in enacting the ordinance, the City desired to "codify[] the Harbor Resources Manager's interpretation of Subsection 17.60.060(E), which allows commercial piers to encroach in front of adjacent property *but does not relieve a person from compliance with Subsection 17.35.020(F).*" (Italics added.) Thus, Riddle contends section 17.60.060(E) should not be read as eliminating the section 17.35.020(F) notice obligation.

Again, we are not persuaded. Notwithstanding that recital, there is no language in the *actual NBMC code sections*, section 17.35.020(F) and 17.60.060(E), suggesting that section 17.35.020(F)'s notice requirements apply to *commercial* tidelands *leases*. To the contrary, section 17.60.060 expressly states commercial tidelands leases "are *exempt* from any provision requiring involvement of the owner or long-term lessee of an abutting upland property." (§ 17.60.060(E), italics added.)[9]

---

[9] As the trial court observed in its statement of decision: "The City's municipal code is not a model of clarity but read together these provisions seem to draw a distinction between residential piers and commercial piers with the former species alone requiring notice to abutting upland owners of the meeting where a new permit may issue regarding the encroachment. Commercial piers in contrast may be approved by the City Manager alone by permit or lease and do not require 'involvement' of the upland abutting land owner nor any sort of public 'meeting' for which notice might be applicable. *Regardless there is no requirement that the city provide any notice before it approves a commercial pier lease in the tidelands.*" (Original bold removed.)

16

Riddle contends constitutional due process principles required the City to provide her notice and an opportunity to object to the lease. But "only those governmental decisions which are *adjudicative* in nature are subject to procedural due process principles. *Legislative* action is not burdened by such requirements." (*Horn v. County of Ventura* (1979) 24 Cal.3d 605, 612.) The City's issuance of the lease was legislative in nature. (See *Mike Moore's 24-Hour Towing v. City of San Diego* (1996) 45 Cal.App.4th 1294, 1303 ["public entity's 'award of a contract, and all of the acts leading up to the award, are legislative in character'"].) It was thus not subject to due process principles.

Further, even if the issuance of the lease were adjudicatory rather than legislative, notice was not required here because, as we have already explained, the lease did not implicate a significant property right. (See *Horn, supra*, 24 Cal.3d at p. 616 ["constitutional notice and hearing requirements are triggered only by governmental action which results in 'significant' or 'substantial' deprivations of property, not by agency decisions having only a de minimis effect on land"].) Even assuming that Riddle has littoral rights in the tidelands near her property, those rights are at best "*qualified* right[s,] at all times subordinate to the paramount right of the state" and its grantees. (*Fager, supra*, 39 Cal.App.2d at p. 31, italics added.) For this reason, an "upland owner who does not own title to the submerged land or tide land in front of [her] property" cannot maintain a due process claim against the State or its grantee because her littoral rights, "under the law in this state, [are] subject to being terminated at will by any disposition which the state may choose to make of such submerged lands or tide lands." (*Ibid.*)

We therefore conclude the City was not required to give formal notice to Riddle or conduct a public hearing before entering into the Vallely lease. Judgment for Defendants on Riddle's due process claim was proper.

17

Finally, we consider Riddle's fourth cause of action for violation of the Brown Act, which requires the "legislative body of a local agency" to conduct open and public meetings except as otherwise provided.  (Govt. Code, § 54950 et seq.)  Riddle sought a declaration that the City violated the Brown Act by not publicly reporting the issuance of the lease to Vallely or the City's settlement of Vallely's appeal concerning his permit transfer request.  The trial court found no Brown Act violation.  The parties agree that we review the ruling, which presents a pure question of law, de novo.

We can find no Brown Act violation.  The City Council was not required to approve or discuss the City Manager's issuance of the lease at a public meeting.  The solitary act of an individual public official—in this instance, the City Manager—is not an act by a legislative body subject to the Brown Act.  (*Golightly v. Molina* (2014) 229 Cal.App.4th 1501, 1514 ["it is collective decisionmaking by a legislative body, not the solitary decisionmaking of an individual public official, which is subject to the Brown Act"]; see Govt. Code, § 54952 [defining "legislative body"].)

Riddle asserts the Brown Act required the City Council to publicly report the issuance of the lease because it was issued in exchange for the dismissal of Vallely's appeal and thus amounted to a "Secret Settlement Agreement," which the City Council surreptitiously approved.  But the trial court found "zero evidence that the City Council (in some secret meeting or otherwise serially) approved any sort of formal settlement with Vallely.  Instead, the evidence demonstrated this 'resolution' of the Vallely litigation was handled at the staff level—without the involvement of the Council."[10]  Riddle cites

---

[10]    As the trial court explained, "[t]he only City Council Meeting where the Vallely permit-transfer litigation was discussed was on January 27, 2015 [when the litigation was still pending].  [Citation.]  There was no evidence that any settlement was approved by the City at this meeting (or any meeting) and the City credibly denied ever reaching a 'settlement' with Vallely.  The lease agreement was negotiated after this closed session and not signed until 3/11/15.  While the lease may have resolved the then

18

nothing in the record to undermine these findings. She asks us to infer from the "suspect" timing of the lease issuance and the dismissal that the City Council was involved in the settlement, asserting it is "axiomatic" that the City Council directed the city attorney to settle the Vallely litigation during a closed session. This is pure conjecture and runs contrary to the evidence cited by the trial court in its statement of decision.

Riddle also suggests the Brown Act requires all settlement agreements resolving city litigation to be reported in open sessions of the City Council. Not so. The Brown Act allows a local agency's legislative body to hold closed sessions to confer with legal counsel regarding pending litigation, provided the legislative body later publicly reports a settlement of the pending litigation after the settlement is final. (Govt. Code, §§ 54956.9, subd. (a)), 54957.1, subd. (a)(3).) But no such closed session occurred here, so no public reporting was required. Simply put, the fact that the lease mooted or resolved the Vallely appeal did not require the City Council to take up the resolution of the Vallely appeal during either an open session or closed session.

For these reasons, we conclude the trial court properly entered judgment for the City on Riddle's Brown Act cause of action.

---

pending litigation, as Vallely immediately dismissed his appeal upon receipt of the lease, this does not mean that the City Council authorized any 'settlement' of the litigation." The court also found "nothing sinister" in the settlement of Vallely's appeal. The court explained: "As Vallely testified, during the course of his litigation against the City he became aware that the City's rules and procedures for approving commercial piers had changed. Rather than continuing his unsuccessful fight with the City over an effort to compel a transfer of his parents' pier permit, he pursued the alternative of his own long-term lease. Contrary to Plaintiff's assertion, there was no evidence that the legislative amendments creating this opportunity had anything to do with 'settling' with Vallely. Instead, these changes were in the works even before Vallely filed his lawsuit and were implemented before any adverse judicial decision on his writ petition. A dismissal of his lawsuit naturally and understandably followed the approval of the lease."

19

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.
(Cal. Rules of Court, rule 8.278(a).)


GOETHALS, J.

WE CONCUR:


MOORE, ACTING P. J.


ARONSON, J.